**In the Matter of WHITCOMB & KEL-LER MORTGAGE COMPANY, INC., Debtor.**

**Bankruptcy No. 80–31021.**

United States Bankruptcy Court, N. D. Indiana, South Bend Division.

Dec. 12, 1980.

Stanley Talesnick, Indianapolis, Ind., James W. Oberfell and Jeffery Johnson, South Bend, Ind., for Whitcomb & Keller.

F. Richard Kramer, South Bend, Ind., for First Bank & Trust Co. of South Bend.

Thomas F. Lewis, Jr., South Bend, Ind., for American Nat. Bank of South Bend.

James D. Nafe, South Bend, Ind., for National Bank of South Bend.

Frederick C. Boynton, South Bend, Ind., for St. Joseph Bank of South Bend.

Donald Moroz, Asst. U. S. Atty., South Bend, Ind., David Epstein, Tracy J. Whitaker, Dwight D. Meier, William Linane, Attys., Civil Div., Dept. of Justice, Washington, D. C., for Government National Mortgage Assn.

J. Richard Ransel, Mishawaka, Ind., for Federal National Mortgage Assn. and Government National Mortgage Assn.

### ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

This matter is before the Court on the petition of the debtor in possession, Whit-

comb & Keller Mortgage Company, Inc. (hereinafter, Whitcomb & Keller), for an order restraining the Government National Mortgage Association (hereinafter, GNMA), from interfering in any respect in the operation of debtor's business and the servicing of its mortgage pools pursuant to Section 362(a)(3) of the Bankruptcy Code[1] which provides:

§ 362. *Automatic stay.*

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—(3) any act to obtain possession of property of the estate or of property from the estate.

Pursuant to GNMA's request for prompt hearing on the debtor's petition, this cause came on for hearing before the Court on November 13, 1980. After the filing of briefs, the Court took this matter under advisement on November 26, 1980. Argument on the briefs was heard by the Court on December 8, 1980.

On October 27, 1980, Whitcomb & Keller filed for reorganization under Chapter 11 of the Bankruptcy Code.[2] At the time of filing its petition in bankruptcy, the debtor was engaged in the mortgage banking business. Part of its business consisted of servicing mortgages under the Mortgage-Backed Securities Program (MBS Program) on behalf of GNMA, a wholly-owned Government corporation located in the Department of Housing and Urban Development. At the time of filing its bankruptcy petition, the Mortgage Servicing Contracts between the debtor and GNMA were in full force and effect and no notice of default or termination had been given to the debtor by GNMA.

The mortgage-backed securities issued by Whitcomb & Keller are "modified" pass-through securities. For these modified pass-through securities, GNMA guarantees the timely payment to the investors, whether or not collected, of interest at the rate fixed by the security together with specified principal installments. Moreover, with respect to the modified pass-through securities, prepayments and any other early recoveries of principal must be paid to investors as they are received.

Because it is a participant in the modified pass-through program, Whitcomb & Keller is obligated under Section 4.03 of its Guaranty Agreement to make up from its own funds any shortfalls in collections under the pooled mortgages. This obligation insures that securities holders will receive full and timely payment. The issuer's obligation to make such payment, even if use of its own funds is necessary, makes each security fungible and obviates the need for a market differential to account for disparities in the cash flow from pool to pool based upon delinquencies and other factors. GNMA regulations[3] require an issuer to maintain a minimum net worth to insure that it has sufficient assets with which to make up any shortfalls in scheduled collections under the pooled mortgages.

According to Paul A. Yates,[4] Director of the Financial Management Division of the Office of Mortgage-Backed Securities, Yates was informed on October 24, 1980, in a telephone conversation with Richard Deal, Whitcomb & Keller's Secretary-Treasurer, that Whitcomb & Keller was not in compliance with GNMA's net worth requirements.[5]

On October 29, 1980, two days after the debtor filed its petition in bankruptcy, GNMA delivered a letter to Whitcomb & Keller, declaring an event of default under the terms of the Guaranty Agreement. GNMA informed Whitcomb & Keller that, as a result, it "may not longer act as issuer or servicer under the guaranty agreements," thus terminating the debtor's sta-

---

1. 11 U.S.C. § 362(a)(3).

2. 11 U.S.C. § 1101 *et seq.*

3. 24 C.F.R. § 390.3(c) (1979).

4. Affidavit of Paul A. Yates.

5. While the debtor is not in default on any payment due under the GNMA agreement, it has failed to maintain adequate net worth requirements.

tus as an issuer. GNMA requested that Whitcomb & Keller turn over specified necessary records to enable GNMA to provide for the orderly transfers of the mortgage pools. By letters to the banks which hold the mortgages and the custodial accounts, also delivered on October 29, GNMA demanded that the above-referenced banks surrender to GNMA the entire amount of any funds in the mortgage-backed security pools issued and serviced by the debtor and on deposit with the respective banks.

Whitcomb & Keller seeks a preliminary restraining order to prevent GNMA from exercising its rights to enforce its contract and ownership rights with respect to the pools of mortgages against which GNMA-guaranteed securities have been issued. In support of this position, Whitcomb & Keller advances three major arguments: 1) GNMA is subject to the automatic stay provision of the Bankruptcy Code; 2) this Court has authority under Section 105 of the Bankruptcy Code [6] to stay GNMA's exercise of its contract rights, and that authority should be exercised; and 3) Congress acted unconstitutionally when it enacted Section 306(g) of the National Housing Act,[7] which does not allow the Bankruptcy Code to limit GNMA's right to terminate an issuer's servicing functions.

GNMA, however, contends that the debtor has failed to demonstrate a probability of success on the merits because 1) the mortgages and all payments under them are property of GNMA; 2) that Section 306(g) of the National Housing Act, as amended, exempts GNMA from the automatic stay provision of the Bankruptcy Code or any order of the Court precluding or limiting GNMA from exercising its rights to enforce its contract with Whitcomb & Keller or enforce its ownership rights thereunder; and 3) that by law, no injunction may be issued against GNMA with respect to its property. Additionally, GNMA maintains that the public interest will be harmed if the requested injunction is granted.

Prior to its recent amendment, Section 306(g) of the National Housing Act stated in pertinent part:

Any Federal, State or other law to the contrary notwithstanding, the Association [GNMA] is hereby empowered, in connection with any guaranty under this subsection, whether before or after any default, to provide by contract with the issuer for the extinguishment upon default by the issuer, of any redemptions, equitable, legal, or other right, title, or interest of the issuer in any mortgage or mortgages constituting the trust or pool against which the guaranteed securities are issued; and with respect to any issue of guaranteed securities, in the event of default and pursuant otherwise to the termination of the contract, the mortgages that constitute such trust or pool shall become the absolute property of the Association subject only to the unsatisfied rights of the holders of the securities based on and backed by such trust or pool.

Section 306(g) was amended through Section 335 of the Housing and Community Development Act on October 8, 1980, as follows:

SEC. 335. Section 306(g) of the Federal Mortgage Association Charter Act is amended—

(1) by striking out "Any Federal, State, or other law to the contrary notwithstanding, the" in the fourth sentence and inserting in lieu thereof "the"; and

(2) by inserting after the fourth sentence the following new sentence: "No State or local law, and no Federal law (except Federal law enacted expressly in limitation of this sub-section after the effective date of this sentence), shall preclude or limit the exercise by the Association of (A) its power to contract with the issuer on the terms stated in the preceding sentence, (B) its rights to enforce any such contract with the issuer, or (C) its ownership rights, as provided in the preceding sentence, in the mortgages constituting the trust or pool against which the guaranteed securities are issued."

---

6. 11 U.S.C. § 105.

7. 12 U.S.C. § 1721(g), as amended by Act of October 8, 1980, Pub.L. No. 96-399.

This amendatory language originated in the House of Representatives to clarify "that the Government National Mortgage Association's authority to contract with an issuer of mortgage backed securities guaranteed by the Association to enforce such a contract or to exercise ownership rights related to the mortgages in the pool against which the guaranteed securities are issued shall not be limited by any other Federal, state, or other law, except by Federal law enacted expressly in limitation of this subsection after the effective date of enactment. The conference report includes the House provision." [8]

The Committee on Banking, Finance and Urban Affairs when reporting on the Housing and Community Development Act expressly stated that the Bankruptcy Code was not intended to limit GNMA's authority: [9]

### AUTHORITY TO PROTECT FEDERAL GOVERNMENT'S INTEREST

Under section 306 of the National Housing Act, GNMA guarantees the timely payment each month of principal and interest on securities backed by groups or pools of FHA-insured or VA or FmHA-guaranteed mortgages. Private lenders issue and sell these mortgage-backed securities and promptly use the sales proceeds to generate additional mortgage loans for pooling. Because of the popularity of these securities with investors, the GNMA Mortgage-Backed Securities program has become critically important to the financing of housing for moderate income families. The program makes available the necessary capital for over two-thirds of the single-family mortgages insured by FHA or guaranteed by VA. More than $95 billion in securities have been issued since the program's inception in 1970. A good deal of the program's success is attributable to the predictability of a mortgage-backed security's income stream; holders of the securities are assured timely payment each month of their shares of principal and interest due under the pooled mortgages, whether or not such sums are actually collected from the mortgagors. Issuers are obligated to advance to their pools any shortfalls in collections of mortgagors' scheduled payments. If an issuer is unable to make the requisite advances, GNMA pays the holders under its guaranty.

GNMA's authority to supervise issuers and minimize losses stemming from an issuer's failure or inability to make full and timely payments to securities holders is provided under section 306(g) of the National Housing Act. This authority is provided notwithstanding any Federal, State, or other law to the contrary. On the basis of this authority, GNMA reserves the right in all of its guaranty agreements with issuers to terminate the issuer's administrative functions in the event of the issuer's failure to maintain sufficient net worth under GNMA's requirements, or if the issuer fails to meet other contractual requirements.

*In amending the bankruptcy laws in 1978, Congress amended and repealed many Federal statutes to conform these Federal laws to the Bankruptcy Code. However, Congress did not expressly amend or repeal section 306(g). Because the Committee feels that GNMA's authority to terminate issuer status under section 306(g) is essential to effecting the GNMA guaranty of timely payment, it has acted to clarify that the changes accomplished by the new Bankruptcy Code are not intended to limit that authority.* The Committee has further amended section 306(g) of the National Housing Act to reinstate the enforceability of the rights and remedies provided for in FHA-approved mortgage instruments and in regulatory agreements between the Secretary of HUD and mortgagors of insured mortgages. This provision was deleted under the 1978 Bankruptcy Act. The enforceability would extend to FHA-in-

---

8. H.R.Con.Rep. on S. 2719, 96th Cong., 2nd Sess. 9814 (1980).

9. H.R.Rep. No. 96–979, 96th Cong., 2nd Sess. 48 49 (1980).

sured or formerly insured mortgages on multifamily projects only. Under the amendment, Federal bankruptcy law would not affect the exercise of such rights and remedies in the absence of future amendment of title II of the United States Code in specific derogation of this provision. (Emphasis added.)

Section 362 and any other provision of the Bankruptcy Code was neither enacted after October 8, 1980, the effective date of the clarifying amendment to Section 306(g) of the National Housing Act, nor enacted expressly in limitation of Section 306(g).

 Accordingly, the Court is constrained to find that GNMA was not required to seek relief from the automatic stay prior to terminating Whitcomb & Keller's issuer status and attempting to arrange for the transfer to another entity of Whitcomb & Keller's servicing obligations.

 Although the automatic stay provision does not apply to GNMA's actions, this Court has ample other powers pursuant to Section 105 of the Bankruptcy Code to stay actions not covered by the automatic stay provision.[10] Nevertheless, an order restraining GNMA issued under Section 105 would have the effect of law and would thereby be contrary to Section 306(g). In any event, it appears that this Court could not issue an order restraining GNMA by virtue of 12 U.S.C. Section 1723a which provides in pertinent part:[11]

§ 1723a. *General powers of Government National Mortgage Association and Federal National Mortgage Association*

. . . but no attachment, injunction, or other similar process, mesne or final, shall be issued against the property of the Association or against the Association with respect to its property; . . .

The Court is dismayed that it cannot afford the debtor any protection, not even temporarily until an assessment can be made regarding the potential for effective reorganization. The stay is an important aspect of the bankruptcy protections intended to permit the debtor to attempt a repayment or reorganization plan. Not only does the stay provide the business with a breathing spell within which to work constructively with its creditors, but it is intended to provide creditor protection; the bankruptcy remedies are designed to provide an orderly procedure under which all creditors are treated equally.[12]

Congress has in effect declared that the reorganization remedies are not available to Whitcomb & Keller and other similarly situated businesses. This clearly contradicts the fundamental concepts of the reorganization provisions of the Bankruptcy Code. By declaring Whitcomb & Keller to be in default (which by the guaranty agreement GNMA may do in the event of any impending or actual insolvency, change in business status of the issuer adversely affecting GNMA, failure to maintain minimum deposit requirements, or any number of specified events), GNMA has effectively killed the patient while on the operating table. This the Court concludes from statements of counsel and the high percentage of debtor's business which involves GNMA.

Although the legislature may enact a law expressly limiting GNMA's powers under Section 306(g) to harmonize GNMA with the bankruptcy laws, Congress has not yet done so. It is the duty of the judiciary to apply the law as enacted by the legislature.

The Court is not persuaded by the debtor's argument that to hold GNMA exempt from the provisions of the Bankruptcy Code would be an unconstitutional derogation of Congress' power to establish uniform laws on the subject of bankruptcy throughout the United States.

---

**10.** H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 342 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6298.

**11.** 12 U.S.C. § 1723a; *Crockett Mortg. Co. v. Government Nat. Mortg. Ass'n.*, 418 F.Supp.

1081 (E.D.Pa.1976); *United States v. Mel's Lockers, Inc.*, 346 F.2d 168 (10th Cir. 1965).

**12.** H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, p. 6296.

Accordingly, the Court hereby denies Whitcomb & Keller's petition for a restraining order.

This opinion constitutes the findings of fact and conclusions of law required by Rule of Bankruptcy Procedure 752.[13]

SO ORDERED.