**In re COMMONWEALTH MORTGAGE COMPANY, INC., Debtor.**

**Bankruptcy No. 92–17073–WCH.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 17, 1992.

A. John Pappalardo, U.S. Atty. and Susan M. Poswistilo, Asst. U.S. Atty., Boston, Mass., for the U.S. on behalf of Government Nat. Mortg. Ass'n.

Charles P. Normandin, Harold J. Marcus and Gregory S. Gilman, Ropes & Gray, Boston, Mass., for debtor in possession.

Scott Harshbarger, Atty. Gen., Barbara B. Anthony, and Ernest L. Sarason, Jr., Asst. Attys. Gen., Boston, Mass., for the Com. of Mass.

Michael J. Pappone, Judith A. Solomon and Winifred L. Swan, Goodwin, Proctor & Hoar, Boston, Mass., for First Nat. Bank of Chicago, Shawmut Bank, First Nat. Bank of Louisville, Sakura Bank, and Bank of America.

Mark N. Berman and Jeffrey M. Snider, Hutchins & Wheeler, Boston, Mass., for official committee of unsecured creditors.

## AMENDED DECISION ON EMERGENCY MOTION FOR ORDER DECLARING THAT THE GOVERNMENT NATIONAL MORTGAGE ASSOCIATION IS NOT SUBJECT TO THE AUTOMATIC STAY [1]

WILLIAM C. HILLMAN, Bankruptcy Judge.

Commonwealth Mortgage Company, Inc. ("Debtor") filed its petition herein on July 13, 1992, and continues to operate its business and assets as debtor in possession.

The United States of America, on behalf of the Government National Mortgage Association ("GNMA") moves for rulings that GNMA is exempt from the automatic stay of 11 U.S.C. § 362 in the exercise of its statutory duties under 12 U.S.C. § 1721(g) and that Debtor be directed to comply with a notice of default previously given to it by GNMA.

In its post-hearing memorandum, the unsecured creditors' committee urges that this matter should have been brought by an adversary proceeding, rather than a motion. Even if that procedural posture might appear to be required, technically, there is no harm to any party caused by the Court's consideration of the issues involved. The questions before the Court are purely legal. *See In re Stacy*, 99 B.R. 142 (D.Mass.1989); *In re Docktor Pet Center, Inc.*, 144 B.R. 14, 16–17 (Bankr. D.Mass.1992).

### FINDINGS OF FACT

The facts of the matter are not in dispute, and may be summarized as follows:

GNMA is a corporation within the United States Department of Housing and Urban Development. It operates a "Mortgage–Backed Securities Program" ("MBS Program") pursuant to 12 U.S.C. § 1721(g) and regulations thereunder, 24 C.F.R. Part 390. Under the MBS Program, GNMA approves "issuers" to originate or purchase pools of mortgages which in turn back securities issued by the issuer and guaranteed by GNMA.

The agreement between GNMA and the issuer provides that the issuer's interest in the mortgages is transferred to GNMA, with the issuer retaining bare legal title for servicing purposes. The issuer, as part of servicing the mortgages, collects the monthly principal, interest, and escrow payments, and remits in accordance with the nature of the program. If a mortgagor fails to make a payment as agreed, the issuer is required to make good the shortfall from its own funds. GNMA's guaranty is effective if the issuer defaults.

A more detailed description of the relationships involved can be found at *In re Adana Mortgage Bankers, Inc.*, 12 B.R. 989, 995–996 (Bankr.N.D.Ga.1980) ("*Adana I*").

Debtor was approved as an issuer and entered into an agreement with GNMA as

---

**1.** The decision dated July 28, 1992, has been withdrawn as it incorporated a determination of matters of statutory construction required by an egregious error in the Lexis statutory data base.

described above ("the Agreement").[2]

The Agreement gives GNMA the right to terminate upon the happening of certain events of default. These include failure to remit as required. Debtor admitted at the hearing that funds received from mortgagors are currently insufficient to meet the full obligations of the Debtor under the Agreement, and that it is unable to fund the difference. This is a self-executing event of default.

Other events of default become such only upon the election of GNMA and after notice to Debtor. These include:

(1) Any impending or actual insolvency on the part of the Issuer, whether equitable or otherwise....

(2) Any change with respect to the business status of the Issuer ... which materially adversely affects GNMA under this Agreement....

On July 13, 1992, Debtor filed its original petition under Chapter 11. The following day, GNMA notified Debtor that it was declaring a default under the quoted provisions of the Agreement, and demanded that, in essence, Debtor forthwith turn over servicing of the pooled mortgages to GNMA. It also made demand upon at least one depository bank that the names on accounts holding appropriate funds be changed to GNMA's name. Upon Debtor's (and the bank's) refusal to comply, the present motion was filed.

Debtor resists, describing its pending sale of certain assets, which this Court has previously approved, and which includes servicing rights under the GNMA contracts. It represents that the sale would bring $2.5–3 million into the estate.

## DISCUSSION

■ The issue before the Court is extremely narrow: Does 12 U.S.C. § 1721(g), as amended effective October 8, 1980, exempt GNMA's actions from the reach of the automatic stay under 11 U.S.C. § 362?

---

**2.** The Court does not agree with the bank group who contend that the Agreement is really two

As amended, and as applicable here, 12 U.S.C. § 1721(g) provides:

The Association [GNMA] is hereby empowered, in connection with any guaranty under this subsection, whether before or after any default, to provide by contract with the issuer for the extinguishment, upon default by the issuer, of any redemption, equitable, legal, or other right, title, or interest of the issuer in any mortgage or mortgages constituting the trust or pool against which the guaranteed securities are issued; and with respect to any issue of guaranteed securities, in the event of default and pursuant otherwise to the terms of the contract, the mortgages that constitute such trust or pool shall become the absolute property of [GNMA] subject only to the unsatisfied right of the holders of the securities based on and backed by such trust or pool. *No State or local law, and no Federal law (except Federal law enacted expressly in limitation of this subsection after [October 8, 1980]) shall preclude or limit the exercise by [GNMA] of (A) its power to contract with the issuer on the terms stated in the preceding sentence, (B) its rights to enforce any such contract with the issuer, or (C) its ownership rights, as provided in the preceding sentence, in the mortgages constituting the trust or pool against which the guaranteed securities are issued.* The full faith and credit of the United States is pledged to the payment of all amounts which may be required to be paid under any guaranty under this subsection. There shall be excluded from the total amounts set forth in subsection (c) the amounts of any mortgages acquired by [GNMA] as a result of its operations under this subsection.

12 U.S.C. § 1721(g) in part (emphasis added).

Section 362 of the Bankruptcy Code is, of course, senior to the quoted statute and does not expressly refer to it; hence it is not one of the excepted statutes.

agreements in one which can be bifurcated.

Notwithstanding that both statutes have existed for almost twelve years, it would appear that the issue of conflict between them has been discussed in only two decisions.

In the case of first impression, *In re Adana Mortgage Bankers, Inc.*, 12 B.R. 989 (Bankr.N.D.Ga.1980) ("*Adana* I")[3], Judge Norton held that "Congress did not intend to exempt GNMA from the automatic stay provisions of the Bankruptcy Code." *Id.* at 999. He ruled that

Although [§ 1721(g)] may be the "applicable law" for purposes of determining whether the Debtor may assume the Guaranty Agreement under Section 365(c) of the Bankruptcy Code, [§ 1721(g)] does not exempt GNMA from the operation of the Bankruptcy Code.

. . . .

Section [1721(g)] merely authorizes GNMA to create a contractual right to extinguish [issuer's] rights in the mortgages after a valid declaration of an event of default. Bankruptcy Code Section 362 provides that, after the filing of a petition for relief, such contractual rights cannot be exercised without judicial relief from the automatic stay.

*Id.* at 999, 1000.

The next and final decision was also in 1980, and took the opposite view. *In re Whitcomb & Keller Mortgage Co.*, 8 B.R. 83 (Bankr.N.D.Ind.1980).

Judge Rodibaugh held that § 1721(g) takes GNMA beyond the reach of the automatic stay. *Id.* at 87. Further, he held that even the Court's broad powers under § 105 of the Bankruptcy Code would be unavailing because of 12 U.S.C. § 1723a:

... but no attachment, injunction, or other similar process, mesne or final, shall be issued against the property of the

Association or against the Association with respect to its property ...

*Id.*[4]

For whatever reason, the issue before the Court has been absent from the last 120 volumes of the Bankruptcy Reporter.

Many of the parties in interest seek support for their position in the legislative history of § 1721(g). There is something to be found in the committee and conference reports to support both sides of the issue, and perhaps other conclusions as well, a not uncommon situation. Even to the extent that any consistency can be found, the Court agrees with the statement the Earl of Halsbury, Lord Chancellor,

that in construing a statute I believe the worst person to construe it is the person who is responsible for its drafting. He is very much disposed to confuse what he intended to do with the effect of the language which in fact has been employed.

*Hilder v. Dexter*, [1902] A.C. 477.

We turn to the language of the statutes.

GNMA concedes that its past and proposed post-petition actions would be restrained by § 362 unless an exception to that statute can be found in the operative language of § 1721(g). The latter can be parsed as follows:

1. No State or local law, and no Federal law (except Federal law enacted expressly in limitation of this subsection after the effective date of this sentence),

2. shall preclude or limit the exercise by [GNMA] of

(A) its *power to contract* with the issuer on the terms stated in the preceding sentence,

(B) its *rights to enforce* any such contract with the issuer, or

(C) its *ownership rights* as provided in the preceding sentence,

---

**3.** Both *Adana I* and *Adana II* [12 B.R. 1012] were vacated by the Eleventh Circuit, 687 F.2d 344 (11th Cir.1982), but not on substantive grounds.

**4.** Debtor has not invoked § 105 in the present case.

3. in the mortgages constituting the trust or pool against which the guaranteed securities are issued.

As we are not faced with an issue involving GNMA's current right to contract, 2(A) is inapplicable as such.

The Court has examined the various contracts between GNMA and Debtor and finds that they are of the type authorized by the statute. As a result, it demands the conclusion that the automatic stay does not apply to the actions which GNMA has commenced to enforce its rights.

In so ruling, the Court echoes the sentiments of Judge Rodibaugh:

The Court is dismayed that it cannot afford the debtor any protection, not even temporarily until an assessment can be made regarding the potential for effective reorganization....

Congress has in effect declared that the reorganization remedies are not available to [Debtor] and other similarly situated businesses. This clearly contradicts the fundamental provisions of the Bankruptcy Code.

Congress granted the automatic stay, and then chips away at it in various ways. *See. e.g.,* 11 U.S.C. § 1113; *In re Arlene's Sportwear,* 140 B.R. 25 (1992).

## CONCLUSION OF LAW

The Court finds that the automatic stay of 11 U.S.C. § 362 does not apply to the actions of GNMA as to its rights to enforce its contract with Debtor. Having so found, it is not necessary to consider the issues involving ownership rights to the mortgages in question.

The Debtor is required to comply with the terms of the Agreement applicable upon default.

An appropriate order entered on July 28, 1992.