In re Archibald Wallace DAWS, III and Mary Waters Daws, Debtors.

BANK OF HAWAII, a Hawaii corporation, Plaintiff,

v.

Archibald Wallace DAWS, III and Mary Waters Daws, Defendants.

Bankruptcy No. 81–0042.

United States Bankruptcy Court, D. Hawaii.

July 21, 1981.

Gary Y. Shigemura, Honolulu, Hawaii, for plaintiff.

Ralph Sahara, Honolulu, Hawaii, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW; ORDER

JON J. CHINEN, Bankruptcy Judge.

On March 31, 1981, Archibald Wallace Daws, III and Mary Waters Daws, husband and wife, hereafter "Debtors", filed a joint petition seeking relief under Chapter 13 of the Bankruptcy Code. On April 7, 1981, Bank of Hawaii, hereafter "Bank", filed a Complaint to Modify Stay to Permit Foreclosure of Lien Upon Property of Debtor and to Permit Prosecution of Pending Suit. A hearing was held on June 3, 1981, at which time Debtors were represented by Ralph Sahara and Bank was represented by Leslie K. Iczkovitz. Based upon the evidence adduced, the memoranda and records herein, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Bank of Hawaii is a Hawaii corporation doing business in the State of Hawaii.

2. Archibald Wallace Daws, III and Mary Waters Daws are husband and wife and are residents of Honolulu, Hawaii.

3. On or about October 1, 1979, Daws executed and delivered to Bank a Note and Security Agreement for the principal sum of $9,908.04.

4. This Note was secured by three motor vehicles, namely a 1975 Chevrolet Pickup, a 1978 Chevrolet Corvette, and a 1973 Oldsmobile Cutlass.

5. In March of 1980, Bank assigned the matter to their attorney, the Law offices of Gary Y. Shigemura, for collection on this account, and to replevin these vehicles, and to obtain an order for immediate possession, due to the default by Debtors in the payments that were due under said Note.

6. Bank, through its attorneys, filed a Complaint against the Debtors in the Circuit Court of the First Circuit of the State

of Hawaii, Civil No. 64856, seeking judgment against the Debtors and also seeking immediate return of the Corvette and Chevy Pickup. Bank did not wish to repossess the Cutlass due to its finding that said Cutlass was in poor condition and seemingly valueless.

7. Subsequently, on or about March 31, 1981, Debtors filed a joint petition seeking relief under Chapter 13 of the Bankruptcy Code, which Petition served to stay Bank's suit in the Circuit Court as aforesaid.

8. On April 7, 1981, Bank filed a Complaint to Modify Stay to Permit Foreclosure of Lien Upon Property of Debtor and to Permit Prosecution of Pending Suit, claiming that it has not been offered nor has it received adequate protection for its interest in the property encumbered by Bank's Note and Security Agreement, and further, that the Debtors do not have any equity in the aforesaid motor vehicles.

9. A Pre-trial conference and a preliminary hearing were held on the Complaint to Modify Stay on May 5, 1981, which resulted in an order that the Debtors make payment in the sum of not less than $200.00 on or before May 15, 1981, this payment to be made directly to the Law Offices of Gary Y. Shigemura; and it was further ordered that the Debtors provide proof of full comprehensive and collision insurance for each of the motor vehicles on or before May 8, 1981. On May 5, 1981, Debtors filed their Chapter 13 Plan calling for monthly payments of $150.00 into the Plan and also calling for Bank to receive pro-rata payments.

10. The Final hearing on the Complaint to Modify Stay was held on June 3, 1981. The following facts were established through the testimony of Gary Fujita, Assistant Cashier and Assistant Manager of Installment Loan Collection Department for Bank of Hawaii were determined:

a. As of June 3, 1981 the sums owing to Bank by Debtors pursuant to said Note and Security Agreement were as follows:

| | |
|---|---|
| Gross Balance Owing Under Contract | $ 6,683.03 |
| Attorney's Fees through May 31, 1981 | 3,490.50 |
| Court Costs and Bond Premium | 348.99 |
| Total Owed | $10,522.32 |

(inclusive of Attorney's fees as of May 31, 1981)

b. As of June 3, 1981 Debtors were past due in their payments in the sum of $1,044.26. This sum does not include any amount of the attorney's fees.

c. Debtors had failed to repair and upkeep the Bank's collateral and the Corvette had suffered extensive body damage, the cost to repaid for which would range from $500 to $1,500.

d. The Corvette as is could be sold by the Bank for approximately $5,000 in its public sale. If the vehicle was repaired, the Bank could possibly sell the Corvette for $7,000.

e. No value could be determined for the Chevy Pickup truck because the Debtors failed to bring this vehicle to Bank for inspection as promised.

11. At the hearing, on the issue of adequate protection, the Debtors made the following representations and promises:

a. That they would and could make a $500 payment to Bank on or before June 8, 1981.

b. That they would and could bring the account current by July 1, 1981.

c. That they would and could pay 10% of reasonable attorney's fees by July 1, 1981.

d. That they would repair the Corvette automobile and bring both vehicles to the Bank for regular inspection.

12. After the hearing, the attorney for Bank discussed the proposal made by the Debtors and made the following offer to Debtors:

a. That Bank would settle the Complaint if (1) Debtors made payment of $500 on or before June 8, 1981; (2) pay 10% of the attorney's fees through May 31, 1981, namely 10% of $3,490.03, ($349.00); (3) pay the remainder of the attorney's fees within a year; (4) they bring the account current by July 1, 1981; (5) that they repair the Corvette within two weeks of settlement; and (6) that the payments for the automobiles would be made outside of the plan so as to avoid payment to the trustee for trustee compensation and trustee expenses

which would be incurred if payments were made inside the plan.

13. On June 8, 1981, Debtors' attorney informed Bank's attorney that Debtors were rejecting the offer, and were not making any counteroffer to Bank.

14. Upon request made by attorney for Bank, a supplemental hearing was held on June 15, 1981. At this hearing the following facts were determined:

a. The nature of the offer made to Debtors by Bank and the rejection of the offer by Debtors, as aforesaid.

b. Debtors made a payment $200 on June 5, 1981 but did not make a full payment of $500 on or before June 8, 1981 as promised by Daws.

c. Debtors did not submit any new proposal of payment to Bank of the amount owed to Bank.

## CONCLUSIONS OF LAW

I. Has the Bank received adequate protection for its interest in the Chevrolet Pickup truck and the Chevrolet Corvette?

1. Section 362(d)(1) allows the court to grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property".

2. The legislative history regarding the automatic stay provides some of the circumstances under which adequate protection is required.

Adequate protection in the form of either cash payments and or a replacement lien must be provided the creditor whose collateral is decreasing in value or is being consumed during the stay. S.Rep.No. 95–989, 95th Cong., 2d Sess. 4, U.S.Code Cong. & Admin.News 1978, 5787, 5790 (1978).

3. The party opposing the Complaint to Modify Stay has the burden of proof on the issue of whether they are providing adequate protection to a secured creditor under Section 362(g)(2) of the Bankruptcy Code.

4. Adequate protection may be provided by requiring the trustee to make periodic cash payments to the extent that the stay under section 362 results in the decrease in the value of such secured creditors' interest in property, section 361(1), or by granting such other relief as will result in the realization by such entity of the "indubitable equivalent" of such entity's interest in such property, section 361(3).

5. Judge Learned Hand stated in *In re Murel Holding Corp.*, 75 F.2d 941, (2d Cir. 1935) that adequate protection to a creditor must be completely compensatory.

It is plain that "adequate protection" must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence. *Id.* at 942.

6. In the instant case, the Court finds that the value of the vehicles has decreased and will continue to decrease. As a result, under the Code the Debtors are required to provide adequate protection to Bank.

7. The Court finds that Debtors' promises to make certain payments to the Bank in the future are insufficient protection for Bank's security interest in its collateral due to the present amount past due. The Court finds that although the Debtors promised to make a payment of $500 to Bank on or before June 8, 1981, the Debtors were unable to make said payment in full, only being able to make payment in the sum of $200 on or before said date. The inability of Debtors to make this payment is evidence of their inability to make payments in the future in accordance with their promises. In addition, Mr. Daws testified on June 3, 1981, that his job would last for a few more weeks and that thereafter

he has to look for another job. Because of the economic situation, Mr. Daws admitted that his outlook for another job was not certain.

8. The Debtors have not met their burden of proof with respect to whether adequate protection could be provided to Bank for its security interest in said motor vehicles.

II. Do the Debtors have equity in the motor vehicles?

 9. The only evidence presented at the trial as to the present value of the Corvette showed that the present value of the vehicle is $5,000.00. The present sum owing to Bank under the Note and Security Agreement is $10,522.52 as of June 3, 1981. The party requesting relief from the stay pursuant to Section 362(d) has the burden of proof on the issue of the Debtors' equity in the property, under Section 362(g) of the Code. Bank has met its burden of proof and this Court finds that Debtors do not have any equity in their property.

10. Based upon the foregoing, the Court concludes as follows:

 a. The Debtors have not provided adequate protection to Bank for its security interest in the aforesaid motor vehicles.

 b. The Debtors have no equity in their property.

IT IS HEREBY ORDERED that the stay issued pursuant to section 362 should be lifted, thus allowing Bank to foreclose upon its lien upon said motor vehicles, and to permit prosecution of the pending suit if Debtors do not voluntarily return possession of said Chevrolet Pickup truck and said Chevrolet Corvette within five days of the entry of this order.