**WOLOHAN LUMBER COMPANY, Plaintiff,**

v.

**Richard L. ROBBINS, Betty J. Robbins, Milton L. Sprowl, Trustee, Milton Federal Savings & Loan Association, Defendants.**

**In the Matter of Richard D. ROBBINS, Betty Jean Robbins, Debtors.**

**Adv. No. 3–80–0670.
Bankruptcy No. 3–80–00635.**

United States Bankruptcy Court, S. D. Ohio, W. D.

June 8, 1982.

Edward M. Taylor, Jr., Dayton, Ohio, for defendant, Milton Fed. Sav. & Loan.

Milton L. Sprowl, Dayton, Ohio, Trustee.

James A. Staley, Milford, Ohio, for plaintiff.

Patrick K. Smith, Dayton, Ohio, for debtors/defendants.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

This matter is before the Court upon "Amended Complaint Objecting to Secured Claim of Milton Federal Savings and Loan Association," (hereinafter Milton Federal), filed on 1 July 1981. The Complaint essentially requests that this Court determine whether postpetition interest on a senior claim should be paid prior to prepetition principal and interest due on a junior claim secured by the same collateral. The Court

considered that matter at a pretrial conference on 7 August 1981. On 21 September 1981, Plaintiff submitted a "Motion to Strike and for Attorney's Fees." On 15 October 1981, Milton Federal filed a responsive "Motion for Order Ordering Trustee to Return Money, Attorney Fees, and Memorandum of Opposition of Plaintiff's Motion for Attorney Fees." The Court decided the Motion to Strike and the question of attorney fees, and then issued simultaneous Orders that the parties each submit legal briefs on the issue of the priority of postpetition interest, along with any relevant documents necessary for the Court to render an informed opinion, and that a decision on Milton Federal's "Motion for Order Ordering Trustee to Return Money" be deferred until briefs are submitted as requested. The parties subsequently submitted legal briefs, and appended documents. The Court notes that the parties have not objected to the admissibility or competency of the documents, and that no party has requested further hearing on this matter. The following decision, therefore, is based upon the parties' legal briefs and the record.

### FINDINGS OF FACT

This matter is the result of the sale by the Trustee of two parcels of Debtors' real estate and the transfer of valid liens to the proceeds of sale. The proceeds are now held by Trustee, though the Trustee has distributed a portion of the proceeds (to which liens were attached), as will be discussed below.

The first subject property is a 20.393 acre parcel, (hereinafter the farm), which the Trustee, sold as four separate parcels for an aggregate sale price of $148,000.00.[1] The

---

1. Some figures of record refer to "the farm" as a single entity, while some refer to "it" as four separated parcels. Since the parcels are contiguous and were originally one parcel, and since detailed discussion of the division of the farm into separate parcels would be irrelevant to the instant question, the Court for purposes of simplicity will refer to "the farm" as a single entity, and will adjust figures and computations accordingly.

The property is legally described in both Plaintiff's Exhibit "A" and Milton Federal's Exhibit "A" as follows:

Situate in the Southeast Quarter of Section 4, Town 6, Range 4 East, Clay Township, Montgomery County, State of Ohio, and being part of the 30.969 acre tract (33.175 acre excepting 0.45 acre and 1.756 acres) conveyed to Althea M. Mt. Castle as recorded in Deed Book 2542, Page 155 of the Montgomery County Deed Rec-

second property is a .531 acre parcel, hereinafter the commercial property, which the Trustee sold for $38,000.00.[2] The Court notes that the Trustee's sales were accomplished without objection pursuant to Order of the Court after notice and opportunity for hearing. The Court also notes that the parties do not dispute the proper conduct of the sale or the adequacy of the sale price.

Debtors' Schedules list six creditors claiming security interest in the farm. The pertinent facts, as listed in Debtors' Schedules are as follows:

| Name of Creditor | Description of security and date when obtained by creditor | Amount of claim without deducting value of security |
|---|---|---|
| Milton Federal Svgs. & Loan Assoc. | 1st Mortg. 2/2/79 | $93,000.00 |
| Milton Federal Svgs. & Loan Assoc. | 1st Mortg.[3] | $41,000.00 |

ords, and being more fully bounded and described as follows:

Beginning at a railroad spike in the centerline of Arlington Road, in the east line of said Southeast Quarter Section, and at the northeast corner of said Mt. Castle 30.969 acre tract, said beginning point being North 00° 05′ 20″ West, 1111.0 Feet from an iron pin at the southeast corner of said Southeast Quarter Section.

Thence with the centerline of said Arlington Road, with the east line of said Southeast Quarter Section, and with the east line of said Mt. Castle 30.969 acre tract, South 00° 05′ 20″ East, 680.0 feet to a railroad spike.

Thence parallel to the south line of said Southeast Quarter Section, due west, 1311.2 feet to an iron pipe in the west line of said Mt. Castle 30.969 acre tract, said west line also being the east line of the excepted 18 foot wide strip of land described in said Mt. Castle deed.

Thence with the west line of said Mt. Castle 30.969 acre tract, North 00° 26′ 20″ West, 672.9 feet to a concrete corner fence post at the northwest corner thereof, witness an iron pipe set 0.2 feet west.

Thence with the north line of said Mt. Castle 30.969 acre tract, North 89° 41′ 30″ East, 1315.3 feet to the point of beginning, and containing 20.393 acres, more or less, subject to all legal highways and easements of record. The above description was prepared by and based on surveys made in April and September, 1978, and previously, by Donald R. Bowman, Registered Surveyor Number 4323.

2. The commercial property is legally described in both Plaintiff's Exhibit "B" and Milton Federal's Exhibit "B", as follows:

Situated in the Village of Phillipsburg, Township of Clay, County of Montgomery, State of Ohio, in the East half of the Southeast Quarter of Section 2, Town 6, Range 4 East, being a parcel of land conveyed to Frank W. Painter and Anita L. Painter, his wife, and recorded in Deed Book 1515, Page 180 and Deed Book 1762, Page 305, of the records of said County; that part herein conveyed is more particularly bounded and described as follows:

Beginning at a point in the West Line of Ludlow Street, a distance of 20 feet from the North line of Lot # 40 of the Plat of an Addition to the Town of Phillipsburg, as recorded in Plat Book "A", Page 1 of the records of said County; thence with the West line of said Ludlow Street, Northwardly a distance of 156 feet to an iron pin at the Northeast corner of the Parcel II described in Deed Book 1762, Page 305 of the records of said county; then with the North line of said Parcel II, Westwardly a distance of 146.85 feet to an iron pin; thence with the West line of said Parcel II, Southwardly a distance of 159 feet to a point; said point being 20 feet North of the North line of Lot # 38 of the said Plat of an Addition to the Town of Phillipsburg; thence Eastwardly with a line parallel and 20 feet distance from the North line of said Lots 38 through # 40, a distance of 146.85 feet to the place of beginning, containing 0.531 acres.

3. This mortgage is scheduled separately because it is listed as relating to only one parcel of "the farm". See the footnote with a single asterisk above.

| Name of Creditor | Description of security and date when obtained by creditor | Amount of claim without deducting value of security |
|---|---|---|
| Warner, Burnell | 2nd Mortg. 9/79 | $ 6,400.00 |
| Wolohan Lumber | Judgment Lien 10/17/79 | $35,329.41 |
| Robert L. Hough | Mechanics Lien 1/21/80 | $ 1,050.00 |
| Lotter, John | Mechanics Lien 1/21/80 | $ 1,936.00 |
| Summers, Dan Constr. | Mechanics Lien 1/29/80 | $ 1,500.00 |

Debtors' Schedules also list, under the same headings as above, six creditors who claim a security interest in the commercial property as follows:

| | | |
|---|---|---|
| Milton Federal Svgs & Loan Assoc. | 1st Mortg. 7/11/78 | $51,138.41 |
| Robbins, Oddetta | 2nd Mortg. 11/17/78 | $10,000.00 |
| Kuhns, Edwin & Marty | 3rd Mortg. 11/16/78 | $10,000.00 |
| Moore, Jack & Rosie | 4th Mortg. 11/16/78 | $ 5,000.00 |
| Jackson, Tom & Barbara | 5th Mortg. 11/16/78 | $ 5,000.00 |
| Wolohan Lumber Co. | Judgment Lien 10/17/79 | $35,329.41 |

The Court notes that, of the above-named creditors, only Plaintiff Milton Federal is a party to the instant proceeding. The Court, however, additionally notes that none of the above-named parties have contested Debtors' Schedules as listed above.

It is undisputed that Milton Federal possesses the "first and best" liens on both subject properties. The outstanding balances due Milton Federal for principal and accrued interest as of the date of Debtors' Petition filing was $135,683.00 for the farm note, and $59,558.89 for the commercial property note.

Instead, the instant proceedings raise the basic question of the proper disbursement of the subject proceeds in light of the continued accrual of interest on overcollateralized secured debt. The Trustee has retained possession of the entire $38,000.00 of proceeds from the Trustee's sale of the commercial property. The Trustee, however, disbursed to Milton Federal $146,753.77 of the $148,000.00 of proceeds from the Trustee's sale of the farm. Plaintiff contends that this amount is an overpayment to the extent that it constitutes payment for accrued postpetition interest, (i.e. to the extent in excess of the $135,683.00 balance due as of the date of Debtors' Petition filing). Plaintiff contends that, in the event the Court determines that Milton Federal has received an overpayment out of proceeds from the sale of the farm, the amount of the overpayment should be set-off from the $38,000.00 of proceeds from the sale of the commercial property, which Plaintiff concedes would otherwise "belong" to Milton Federal by the vesting of its superior security interest in the proceeds and any income therefrom, to the extent of $59,558.89, the balance owing to Milton Federal on the commercial property note as of Debtors' Petition filing. The Court notes that the precise figures as to the amount of available proceeds are subject to change because of temporary investment of the proceeds by the Trustee and because of various expenses such as tax expenses.

## DECISION AND ORDER

The basic issue before the Court is whether postpetition interest accrued on an over-

collaterized senior secured claim has priority over the prepetition amount due to a junior claim secured by the same collateral. The Court notes that the matter is not presented for determination of the amounts or priority of distribution of the subject proceeds. Instead, since the instant parties have not joined all parties claiming an interest in the proceeds, the real controversy before the Court is limited to Plaintiff's objection, as a junior creditor, to the propriety of the Trustee's distribution of proceeds to an overcollaterized senior creditor for postpetition interest.

Prior to enactment of the Bankruptcy Code, (Act of November 6, 1978, Pub.L. 95–598), the basic rule which developed through case law under the Bankruptcy Act was an overcollateralized secured creditor assumed priority over junior creditors for both arrearages as of the petition filing and for postpetition interest to the extent secured by overcollateralization. See generally, *Annot.*, 27 A.L.R.2d 586 (1953). Although initially there was considerable controversy regarding the handling of postpetition interest when the liquidated value of the security exceeds the value of postpetition arrearages, the prevailing rule which emerged was proceeds from the sale of a security should be applied to the satisfaction of interest accruing after the petition filing in the same priority as that assigned to the prepetition arrearages. See § 3 of Annot., 27 A.L.R.2d 586, 596 (1953), and extensive citation therein.

■ The issue now is whether this rule as developed under the Act was altered by 11 U.S.C. § 506(b), which provides as follows:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

It is the determination of the Court that 11 U.S.C. § 506(b) was intended to codify the earlier rule, as indicated in the legislative history:

Subsection (b) [of 506] *codifies current law* by entitling a creditor with an oversecured claim to any reasonable fees, costs, or charges provided under the agreement under which the claim arose. These fees, costs, and charges are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim. Report of the Committee on the Judiciary, House of Representatives, To Accompany H.R. 8200, H.R.Rep. No.95–595, 95th Cong., 1st Sess. (1977). (Emphasis added).

■ The Court is cognizant that, since payment of postpetition interest operates to deplete funds which would otherwise be available for subordinate creditors, equitable considerations may be invoked to prevent undue prejudice to junior creditors. See *Matter of New York, New Haven and Hartford R. Co.*, 4 B.R. 758, 798–799 (Bkrtcy.D.Conn.1980), and citation therein. The Court is of the opinion, however, that such equitable power is discretionary, and should only be exercised upon a showing of extreme circumstances, which are not indicated by the record *instanter*, except to the extent that "interest on interest" should not be allowed on the senior lien.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Milton Federal Savings and Loan Association is entitled to distribution of the proceeds from the sale of the farm up to an amount inclusive of accrued postpetition interest, on principal, and that the Trustee's distribution to date was, therefore not improper, to this extent.

IT IS FURTHER ORDERED that the Trustee proceed to finalize distribution of the subject proceeds in accordance with the above decision.