In the Matter of Robert Carl LANGLEY, and Shirley Ann Langley, Debtors.

ALBION PRODUCTION CREDIT ASSOCIATION, Plaintiff,

v.

Robert Carl LANGLEY, and Shirley Ann Langley, Defendants.

Bankruptcy No. 82–10694.
Adv. No. 82–1187.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

April 28, 1983.

that certain real estate held in a land trust is not property of the estate of the debtors, or, in the alternative, grant relief from stay so that plaintiff can proceed with a state court foreclosure action. Count II asks the Court to require the debtors to provide adequate protection payments for the use of farm machinery, equipment, tools, and other equipment in which the plaintiff has a security, and requests that the Court grant relief from stay so that plaintiff can recover certain equipment not necessary to debtors' effective reorganization.

As to Count I the parties submitted a stipulation of facts. Further, a trial was held regarding valuation of property and equipment.

## FINDINGS OF FACT

The Court hereby adopts as its own findings the facts set out in the stipulation filed on December 16, 1982. The stipulation shows that the debtors executed a promissory note in the amount of $962,584 in favor of the plaintiff. Further, the debtors gave plaintiff mortgages on real estate in LaGrange and Steuben Counties to secure the above indebtedness. These mortgages were recorded. Thereafter the debtors, by warranty deed, conveyed certain of their real estate on which plaintiff held mortgages, to McGaughey & Morell, Lawyers' Professional Corporation, as trustee, under a trust agreement known as the Langley Land Trust, Trust Number 143. This deed was recorded.

In addition to the stipulated facts, the Court also finds that the debtors are the settlors of the land trust and the only beneficiaries. Further, under the trust agreement, the debtors have reserved all power to direct the trustee to deal with the property, the power to manage, possess, use and control the property, and the right to receive the earnings, avails and proceeds from leases and other uses and from mortgages, sales and other dispositions of the property. The trustee may not deal with the property without the written direction of the beneficiaries.

Patrick E. Hoog, Barrett, Barrett & McNagny, Fort Wayne, Ind., for plaintiff.

C. David Peebles, Peebles, Rogers, Hamilton & Skekloff, Fort Wayne, Ind., for defendants/debtors.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

This matter is before the Court on the amended complaint of Albion Production Credit Association. Count I of the complaint requests that the Court determine

By their contract, on the date they filed their petition, the debtors owed approximately $875,344 plus interest at 13% since that date, if allowed, on their note to plaintiff. (Pl.Exh. F) Further, the debtors owed approximately $211,820 to the Federal Land Bank of Louisville. This debt is secured by a first mortgage, prior to plaintiff's mortgages; and interest on this obligation is approximately 12% per year.

Prior to bankruptcy, the plaintiff initiated a foreclosure action in state court naming the debtors as defendants. This suit has been stayed by debtors' filing of their petition under Chapter 11 of Title 11. Debtors are attempting to reorganize their farming business.

## COUNT I

The plaintiff contends, as to Count I, that the debtors have no interest in the land that is held by the land trust, since in such a trust the trustee holds the legal and equitable title to the land. Further, the debtors, as beneficiaries have an interest in the earnings, avails and proceeds of the res; but this interest is personal property not a real property interest. Thus the plaintiff argues that since the debtors do not have an interest in the real property, the real estate is not property of the estate. Therefore, plaintiff believes that it is entitled to relief from stay to proceed with the state court foreclosure.

Plaintiff also contends that if the realty is found to be property of the estate, Albion Production Credit is nevertheless entitled to relief from stay since the debtors have no equity in the property and it is not necessary to debtors' efforts to reorganize.

The debtors, as to Count I, argue that (1) the real estate is the primary asset of the debtors, (2) the Court, as a court of equity, can look through the form to the substance of a transaction and in so doing the Court should conclude that the debtors are the owners of the land and it is included in the bankruptcy estate; (3) Indiana Land Trust Practice, a book on land trusts, is support

for the proposition that the bankruptcy court has jurisdiction over property of the trust when a beneficiary files bankruptcy; and (4) under Indiana Code 30–1–9–14 [1] the land is property of the estate, because this section provides that where a grantor of lands reserves an absolute power of revocation, he shall be deemed an absolute owner as regards creditors and purchasers.

## CONCLUSIONS OF LAW

Bankruptcy Code Section 541 [2] provides that the commencement of a bankruptcy case creates an estate comprised of all legal or equitable interests of the debtor in property as of the commencement of the case, with certain exceptions that do not apply here. The scope of this section is broad. House Report No. 95–595, 95th Cong., 1st Sess. 367 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787. Further, the scope of what is property of the estate is broader under the Bankruptcy Code than it was under the former Bankruptcy Act. *In re Boyd,* 11 B.R. 690, 692 (Bkrtcy.W.D.Va. 1981).

Section 541 brings all the interests of debtors in property into the estate, including their equitable interests and their beneficial interest in the trust involved herein. *In re Dawson,* 13 B.R. 107, 109 (Bkrtcy.M.D.Ala.1981); *In re Klayer,* 20 B.R. 270, 272 (Bkrtcy.W.D.Ky.1981). In determining what interests the debtors have at the time of filing their bankruptcy petition the Court looks to state law. However, the question of whether the interest is property of the estate is a federal question to be decided by federal law. *In re State of Missouri,* 7 B.R. 974, 980 (E.D.Ark.1980); *In re Haynes,* 9 B.R. 418 (Bkrtcy.N.D.IN.1981).

There is a sparsity of Indiana law on land trusts. However, in enacting the Indiana Trust Code of 1971 it is clear that the Legislature has provided for the availability of this trust device. *See, e.g.,* Indiana Code Section 30–4–2–13 and the Study Commission Comment; Indiana Land Practice at

---

**1.** Ind.Code Ann. § 30–1–9–14 (Burns 1972).

**2.** 11 U.S.C.A. § 541 (West 1979).

1–6 (Indiana Continuing Legal Education Forum 1977). Clearly, however, because of the wide experience with such trusts in the state of Illinois and because Indiana's land trust law follows and leans heavily upon the Illinois experience, the Court will look to Illinois cases and Indiana statutes to determine what interests Indiana courts would likely find in this set of circumstances. *See,* Indiana Land Trust Practice, *supra* at 2–8 and 9, 3–2. (No Indiana case law on the issues herein has been cited, nor has the Court found any upon its own search.)

The Seventh Circuit Court of Appeals in a bankruptcy case, quoting from an Illinois Supreme Court case, said that:

a land trust is typically created by execution of a deed in trust transferring all legal and equitable title to a trustee. The deed specifically provides that one dealing with the trustee need not inquire about the trust agreement and stipulates that the interest of the beneficiary is personal property. The deed [is] recorded. A second document, the trust agreement, [is] simultaneously executed, though not recorded. That agreement recites that all legal and equitable title remains with the trustee with an assignable personal property interest in the beneficiary. The beneficiary retains absolute control of the management and receives all the proceeds of the property. Under the agreement, all money advanced by the trustee must be paid by the beneficiary, and the trustee is not required to pay any taxes or assessments. The beneficiary may order the land sold at any time, and the trustee may not act except on written authorization of the beneficiary.

*In the Matter of Gladstone Glen,* 628 F.2d 1015, 1017 (7th Cir.1980) *quoting People v. Chicago Title & Trust Co.,* 75 Ill.2d 479, 27 Ill.Dec. 476, 389 N.E.2d 540, 542 (Ill.1979). Thus, generally, in a land trust arrangement the trustee holds the legal and equitable title to the res and the beneficiaries hold a personal property interest in the earnings, avails and proceeds from leases and the other uses and from mortgages, sales and other dispositions of the property. The

trust agreement in this case demonstrates that Langley Land Trust is modeled on the Illinois Land Trust device. The characteristics of the trust herein are similar in every way to the typical Illinois land trust.

The *Gladstone Glen* case, *supra,* is very instructive in this matter since it involved, among other things, the question of whether in a bankruptcy proceeding, a settlor-beneficiary of an Illinois land trust was actually the equitable owner of the res, even though it held neither the legal nor the equitable title to the property. The Seventh Circuit, without hesitancy, said that there was no doubt that the debtor-beneficiary of the land trust was the real "owner" of the realty. The beneficiary possessed the right to control, use, and enjoy the property. Further, the Court said that, but for the peculiarities of Illinois land trust law, the beneficiary would certainly be regarded as the equitable title holder. *Id.* at 1018.

In determining just what interest the debtor had in the res, the Seventh Circuit said that a court of bankruptcy, being a court of equity, will look through the form to the substance of a transaction. *See also, In re Hotel Gibson Co.,* 11 F.Supp. 30, 28 Am.B.R. (NS) 520 (S.D.Ohio 1935). In so doing, the Court of Appeals held that the state law "characterization of the beneficiary's interest as personal property without legal or equitable title to the realty is not controlling for purposes of federal law." The Court went on to say that looking to the substance of the matter the beneficiary of a land trust is the equitable owner of the realty. *Id.* at 1019 and cases cited therein.

While *Gladstone Glen, supra,* was decided under the former Bankruptcy Act, the reasoning and result remain applicable under the Bankruptcy Code. Nothing in the Code has changed the maxim that a court of equity may look through the form to the substance of a transaction. Furthermore, Section 541 of the Code has broadened the scope of what interests of the debtor become property of the estate. Consequently, this Court concludes that the holdings of

*Gladstone Glen* direct us to look through the form to the substance and to recognize that the debtors herein are the equitable owners of the res of the trust. Thus a state law characterization, if there were one, of the interests would not be controlling herein.

Even if the Court were required to look to state law characterization, the result would be the same. Since there is apparently not an Indiana case on this issue, the Court would look to Illinois case law to determine what an Indiana court would likely do. The Illinois Supreme Court in *People v. Chicago Title and Trust Co., supra,* 27 Ill.Dec. at 581, 389 N.E.2d at 545 also looked through the form to the substance of the transaction when equity required to find that the beneficiaries of a land trust were the "owners" of the res though legal and equitable title was held by the trustee of the land trust. Thus an Indiana court would probably do likewise.

■ Accordingly, the Court holds that, at least in a case where debtors are the only beneficiaries of an Illinois type land trust, the ownership interest makes the res of the trust property of the estate. The Court does not have before it a case in which there are numerous beneficiaries of the land trust some of whom are not debtors in a bankruptcy proceeding. Thus the Court reserves for another day its opinion regarding what impact, if any, that change in facts might have on a determination of whether the res of the trust is property of the estate. Nevertheless, for the purpose of this proceeding, the Court concludes that the realty held in the Langley Land Trust is property of the estate.

■ This result is further supported by the fact that the debtors-in-possession succeed, as would a trustee, to all the powers and rights held by the debtors on the date of filing their petition in bankruptcy. Among those powers is the authority to direct the trustee of the land trust to sell the property and terminate the trust. The exercise of this power would clearly be in the best interest of the estate in this case. Further, the debtors have a beneficial inter-est in the proceeds of the sale of the res of the trust. Clearly that interest is property of the estate. Thus even if the property were sold pursuant to a postpetition foreclosure sale, the proceeds would be property of the estate, subject to distribution through the bankruptcy laws.

■ Finally, regarding the land trust issues, the creditor, citing *Selby v. Ford Motor Co.,* 405 F.Supp. 164, 2 B.C.D. 30 (E.D. Mich.1975), argues that the bankruptcy court should keep separate the various interests in this land trust, i.e., the land trust trustee's interest in the realty and the debtors' personal property interests. The *Selby* case is clearly distinguishable on its facts from the case herein. In *Selby* the issue was whether money owed to the debtor-contractor and paid to subcontractors had been impressed with a trust as a result of the Michigan Builder's Trust Act so that the debtor held the money only as a trustee for the benefit of the beneficiaries-subcontractors. The court held that the funds were so impressed and thus they were not property of the estate. It is well settled bankruptcy law that where the debtor holds property as a trustee for the benefit of others, that property is not part of the estate. *See e.g.,* 11 U.S.C.A. § 541(a)(1) and (b). The trustee succeeds only to the title and the rights the debtor had in the property. The actual res is held subject to the equitable rights of those with the beneficial interest. *Travelers Insurance Company v. Angus,* 9 B.R. 769 (Bkrtcy.D.Or.1981).

■ On the other hand when property is held in trust *for the debtor,* the estate created under Section 541 succeeds to any interest of the debtor in the trust. *See,* 11 U.S.C.A. § 541(c)(2); 4 Collier on Bankruptcy ¶ 541.14 at 541–69 (15th Ed.1982). In the case at bar, the property is held in trust *for* the debtors, not by the debtors. The debtors-in-possession succeed to the debtors' interest in the land trust. The Court is willing to keep the land trust trustee's legal interest separate from the debtors' interests. However, we are unwilling to do so with regard to the equitable interests, be-

cause the debtors are the equitable owners despite the legal fiction created through the land trust device. Nothing in *Selby* suggests that this Court should do otherwise.

Accordingly, the Court denies those parts of the complaint that request leave to foreclose on the grounds that the property is not property of the estate and abandonment by the debtors-in-possession of the same.

In the alternative the creditor has asked the Court to require that the debtors provide adequate protection for its interest in the property of the debtors, including property held by the land trust. Further, in Count II of the complaint the creditor asks that the Court require the debtors to provide adequate protection for the continued use of farm equipment, machinery, and tools in which creditor has a secured interest and order the return of equipment the debtors do not actually need or use in their farm operation. These matters will be treated together.

While it is not clear from the record whether the plaintiff intends to proceed under Bankruptcy Code Section 362(d)(1),[3] 362(d)(2), or both, the Court will assume from the arguments presented that plaintiff proceeds under both (d)(1) and (d)(2) of Section 362. Plaintiff also invokes Section 363(e)[4] as a basis for relief.

The plaintiff contends as follows:

a) The total amount of collateral available to protect the plaintiff's security interest is nearly equal to the value of the secured claim, but the collateral is diminishing in value and will become insufficient soon.

b) The debtors are in default on their loan.

c) The debtors have not yet proposed a plan, even though it has been nine months since they first filed their petition in bankruptcy.

d) No adequate protection has been offered, and there is no evidence that it could be provided even if offered.

e) Debtors continue to use the collateral to generate income, but they are paying nothing to do so, even though the value of the collateral is decreasing.

f) While the creditor is fully secured, there is no equity cushion.

g) The first mortgagee is oversecured, and so it has the right to accrue postpetition interest on its claim. As that interest accrues, the collateral is diminished in its ability to satisfy plaintiff's secured claim.

h) The plaintiff is suffering damage as a result of lost opportunity by not having access to its collateral, especially where debtor has been slow to propose a plan.

i) Bankruptcy Code Section 363(e) prohibits the use of collateral without adequate protection once creditor requests the same.

j) If the plaintiff were to be paid monthly payments of $11,000 retroactive to date of petition and in the future it would then be adequately protected.

k) The debtors do not need the land involved nor some of the equipment to carry on their rehabilitation efforts.

The debtors contend as follows:

a) The plaintiff is undersecured and thus has no right to postpetition interest.

b) There is sufficient collateral to protect the allowed secured claim to which the plaintiff is entitled.

c) The value of the farm land (the majority of the collateral herein) will increase in value, so there is no need to provide the plaintiff with any further protection.

d) Operating reports show the debtors are making a profit.

■ A secured creditor is entitled to receive adequate protection from the debtor if the value of the collateral securing the allowed secured claim diminishes from the date the debtor files its petition to an amount less than the value of the secured

---

**3.** 11 U.S.C.A. § 362(d) (West 1979).

**4.** 11 U.S.C.A. § 363(e) (West 1979).

claim.[5] Further, when the debtor continues to use the collateral while the proceeding is pending, the creditor may request that it be adequately protected.[6]

■ As a general rule the accrual of postpetition interest is not allowed for the period from the filing of the bankruptcy petition to the confirmation of the plan. 11 U.S.C.A. 502(b)(2) (West 1979). However, there are exceptions to the rule, including that provided by 11 U.S.C.A. § 506(b), which allows for the accrual of post-petition interest when the value of the collateral exceeds the amount of the allowed secured claim.

The plaintiff claims that the amount of its secured claim as of October 1, 1982, was $895,000, with interest accruing since that date. However, the debtors filed their bankruptcy petition on July 14, 1982. Plaintiff's Exhibit F, which is a summary of the loan activity, shows that as of July 31, 1982, the amount of the debt was $875,344. Further, the record shows that the debtors owed the Federal Land Bank of Louisville approximately $211,820, with interest accruing at approximately 12% per year. Thus, on the date of filing their bankruptcy petition, the total amount of the secured claims involved herein were $1,087,164. The Federal Land Bank is an oversecured creditor, and so interest has been accruing on debtors' obligation to it since the filing of the petition. The plaintiff filed its complaint herein in November, 1982. By that date, the amount of the secured claims was approximately $1,095,164 counting interest accruing on Federal Land Bank's loan but not on plaintiff's and using plaintiff's estimate that interest on the Federal Land Bank's loan is accruing at approximately $2,000 per month. By the date of this opinion the amount of the secured claims was approximately $1,105,164, adding the amount of accrued interest on Federal Land Bank's claim.

The parties dispute the current value of the collateral. The debtors say that the total value was $1,500,000, according to appraisal in 1980. Further, they say that for the purpose of adequate protection the Court should use a liquidation approach to valuing the collateral. Finally, a witness for the debtors stated that he believed the land values would come back to the 1980 value. The plaintiff presented an expert witness, who stated at trial that the land and improvements were valued at $830,780, using a method somewhere between liquidation at auction and a going concern sale. No other evidence was presented regarding valuation. Based on the evidence in the record, the Court finds that the value of the land and improvements for the purpose of this proceeding is $830,780.

The plaintiff also has a security interest in equipment, machinery, tools, etc. Plaintiff says that the debtors' schedules and other financing documents show that the value of this collateral is $280,000. The debtors say that they do not own the collateral. They transferred the property to a partnership, of which they are partners. Further, the schedules show that the entire value of the partnership is $278,845. Thus the collateral could not be valued at more than the value of the partnership.

■ The evidence shows that plaintiff's valid and perfected security interest provided in the agreement that the collateral was not to be sold or otherwise disposed of without the written consent of the plaintiff. (Pl.Exh. D.) It is settled law that a security interest in collateral is not extinguished by a sale or transfer of the collateral which is not authorized by the secured party. Thus plaintiff's security interest follows the collateral, and the partnership holds the collateral subject to plaintiff's security interest. Ind.Code Ann. § 26–1–9–306(2) and Indiana Comment (2) at 502; 79 C.J.S.Supp. § 81 at 88 (West 1974); *Production Credit Assn. of Chippewa Falls v. Equity Coop. Livestock Sales Assn.*, 82 Wis.2d 5, 261 N.W.2d 127 (Wis.1978).

---

**5.** *See,* 11 U.S.C.A. §§ 362(d), 361 (West 1979); *In re Pine Lake Village Apartment Co.,* 19 B.R. 819, 825 (Bkrtcy.S.D.N.Y.1982).

**6.** *See,* 11 U.S.C.A. § 363(e) (West 1979).

Having reviewed the evidence, the Court finds that the value of the equipment, machinery, tools, etc., is $278,845. Further, the Court finds that the plaintiff has a valid security interest in the same despite the fact that the collateral has been transferred to the partnership.

The following is a summary of the findings on the value of the collateral and the amount of the secured claims:

| Value of collateral on date bankruptcy was filed | $1,107,625 | |
|---|---|---|
| Secured claims involved herein on date of petition in bankruptcy | 211,820 | Fed. Land Bank |
| | 875,344 | Plaintiff |
| | $1,087,164 | |
| Value of collateral on date of this opinion | $1,107,625 | (not counting any depreciation on equipment, machinery, tools)[7] |
| Secured claims on date of this opinion. | 211,820 | Fed. Land Bank |
| | + 18,000 | Accrued postpetition interest per plaintiff for Federal Land Bank |
| | $ 229,820 | |
| | 875,344 | Plaintiff |
| | $1,105,164 | |

In these calculations, the Court has utilized the estimated interest amount ($2,000 per month) suggested by plaintiff regarding the Federal Land Bank's accrued postpetition interest, even though uncontroverted testimony was that the interest rate on the Federal Land Bank's loan was approximately 12% per year.

As can plainly be seen, the ability of the collateral to satisfy both secured claims has diminished since the case was filed, and this will continue, since Federal Land Bank has a right to accrued postpetition interest. Further, although the plaintiff was an oversecured creditor when the case was filed, it will not be so by the confirmation of a plan in this bankruptcy. In addition, the debtors continue to use the collateral and have yet to propose a plan or submit a disclosure statement, even though the case is nine months old. Consequently the Court must assume that the decline in the ability of the collateral to satisfy both claims will continue.

Thus, the Court concludes that cause exists entitling the plaintiff to some relief from the automatic stay. The plaintiff has the right to have the stay modified in such a way that the plaintiff is adequately protected, pursuant to Code Section 362(d)(1). However, since the debtors do have some equity in the collateral, and since the Court is not convinced that this property is unnecessary for rehabilitation, the plaintiff is not entitled to an order of abandonment nor relief from stay to foreclose under Code Section 362(d)(2).

The plaintiff says that in order to be adequately protected it should receive payments of $11,000 per month, and that the payments should also be retroactive. The $11,000 represents plaintiff's estimate of loss it suffers utilizing the amount of interest accruing each month on the Federal Land Bank obligation plus the monthly interest that plaintiff is not receiving on its own loan.

The Court has no problem in accepting the proposition that adequate protection would include payments to offset the amount of accruing postpetition interest on Federal Land Bank's obligation. This accrual is clearly diminishing the value of the collateral from the date the petition was filed, with the effect that less collateral will be able to be available to satisfy plaintiff's claim.

The difficulty with the adequate protection phase of this case is whether adequate protection should also include within its scope postpetition interest for the plaintiff. For the reasons given below, the Court concludes that due to the equities in this case, adequate protection would include payment of postpetition interest on plaintiff's loan from the date of the complaint for relief from stay.

---

**7.** This case has been filed for nine months. It is likely that the machinery, equipment, and tools the debtors are using have depreciated. However, no evidence at all was presented to the Court regarding the amount of deprecia-tion. Accordingly, while the Court will consider the likelihood of depreciation, given the nature of this type of collateral, we will not find that this collateral has depreciated by a specific amount.

■ The general rule in a Chapter 11 proceeding is that a secured creditor is not entitled to postpetition interest for the time period from the filing of the petition in bankruptcy to the confirmation of a plan. Code Section 502(b)(2)[8]; *In re Busman,* 5 B.R. 332, 336 (Bkrtcy.E.D.N.Y.1980). However, there are exceptions to the general rule. In the *Matter of Walsh Constr., Inc.,* 669 F.2d 1325, 1330 (9th Cir.1982) the 9th Circuit Court of Appeals set out the exceptions as follows:

An award of post-petition interest may be allowed in three exceptional cases: (1) where the alleged bankrupt proves solvent; (2) where the 'collateral produces income after filing of the petition, (3) where the collateral is sufficient to pay the interest as well as the principal of the claim.'

*See also, In re Kerber Packing Co.,* 276 F.2d 245 (7th Cir.1960); *In re Caudle,* 13 B.R. 29 (Bkrtcy.W.D.Tenn.1981).

While *Walsh Constr.* was decided under the former Bankruptcy Act, the Code's provision in Section 506(b) codified the former law in this area. *See e.g., Wolohan Lumber Co. v. Robbins,* 21 B.R. 747 (Bkrtcy.S.D.Ohio 1982).

■ Bankruptcy Code Section 363(e) is another part of the Code relevant to this problem. It provides that, on request of the secured party, the Court shall prohibit or condition postpetition use of collateral as is necessary to provide adequate protection. 11 U.S.C.A. 363(e) (West 1979). Thus the secured creditor is entitled to adequate protection where collateral diminishes in value while debtor continues to use the same. *In re Daws,* 13 B.R. 101 (Bkrtcy.D.Haw.1981).

The authorities are split on the question of whether the scope of adequate protection can include postpetition interest. Some courts have said that payments to an undersecured creditor are not required to satisfy adequate protection even to compensate the creditor for its lost opportunity costs (its inability to have access to and reinvest the collateral) during the time period from the filing of the petition to confirmation of a plan. *In re South Village, Inc.,* 25 B.R. 987 (Bkrtcy.D.Utah 1982); *In re Pine Lake Village Apartment Co.,* 19 B.R. 819, 827 (Bkrtcy.S.D.N.Y.1982). *See also, In re American Mariner Industries, Inc.,* 10 B.R. 711 (Bkrtcy.C.D.Cal.1981), aff'd, 27 B.R. 1004, 10 B.C.D. 281 (Bkrtcy. 9th Cir. 1983); O'Toole, *Adequate Protection and Postpetition Interest in Chapter 11 Proceedings,* 56 Am.Bankr.L.J. 251 (Summer 1982).

In general, the above authorities take the position that adequate protection includes only compensation for actual diminution of the value of the collateral itself during the period after the bankruptcy petition is filed. Thus adequate protection relates only to the preservation of the collateral. Proponents of this view claim that the secured creditor is not deprived of due process nor protection of the law since, if the debtor unreasonably delays during the protected time period, the creditor can come before the court to have the case converted or dismissed. They also argue that the debtor needs protection from the creditors in the early phase of a Chapter 11 proceeding if it is expected to be able to rehabilitate itself.

On the other hand, other courts have decided that under certain circumstances adequate protection does include postpetition interest payments. *In re Monroe Park,* 17 B.R. 934 (D.Del.1982); *In re Virginia Foundry Co., Inc.,* 9 B.R. 493, 498 (D.W.D.Va.1981); *In re Anchorage Boat Sales, Inc.,* 4 B.R. 635 (Bkrtcy.E.D.N.Y.1980).

The above courts, in general, say that adequate protection should include the preservation of the ability of the collateral to satisfy the secured claim. Thus, where a senior creditor is accruing postpetition interest that erodes the ability of the collateral to satisfy junior secured claims, the debtor would be required to provide adequate protection. *In re Monroe Park, supra* at 939. They argue that the legislative history and established bankruptcy law dictate that the secured creditors should not be deprived of the benefit of their bargain nor should

---

**8.** 11 U.S.C.A. § 502(b)(2) (West 1979).

their interest be impaired during the administration of the case, especially when the debtor takes a longer than usual amount of time to have a plan confirmed. *In re Virginia Foundry Co., Inc., supra* at 497; *Oppenheimer v. Oldham,* 178 F.2d 386, 389 (5th Cir.1949).

■■■■■ Adequate protection was intended by Congress to be a flexible concept determined by the circumstances and equities of each case. *In re Alyucan Interstate Corp.,* 12 B.R. 803, 805 (Bkrtcy.D.Utah 1981); 2 Collier on Bankruptcy ¶ 361.01[1] at 361–3 (15th Ed.1982). The concept was not intended to be confined strictly to the constitutional requirements of the 5th Amendment. Section 361 and the concept of adequate protection are based as much on policy grounds as on constitutional grounds. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 339 (1977) (reprinted in Collier on Bankruptcy, Appendix, 15th Ed.1982).

The facts of this case demonstrate the desirability of a flexible concept, along with case by case determination. While the debtors are provided a respite from acts of creditors in order to get their affairs in order and plan an approach to reorganization, they should not be allowed to string this protection out over an unreasonable time period. Further, the purpose of the protection is to facilitate rehabilitation where possible. It is desirable that *some* pressure be maintained to move debtors along toward presentment of a plan, especially where the debtors have the continued use of another's collateral. In this case the plaintiff was oversecured at the time of the filing of the petition. At that point the creditor was entitled to postpetition interest. The debtors have very little equity in the collateral. The ability of the collateral to satisfy the allowed secured claim of the plaintiff diminishes each month that interest accrues for the senior creditor. The debtors have had the use of this collateral for nine months during which time the collateral has been used to produce money and has suffered some depreciation in value.

Furthermore, courts have held that the subject of allowance of postpetition interest is ultimately governed by the equitable principles of bankruptcy administration. The touchstone of each decision on postpetition interest has been a balance of equities between creditor and creditor or between creditor and debtor. *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946); *In re Marx,* 11 B.R. 819 (Bkrtcy.S.D.Ohio 1981); *In re Alyucan Interstate Corp.,* 12 B.R. 803 (Bkrtcy.D.Utah 1981). It should be noted that the Bankruptcy Appellate Panel of the 9th Circuit in *American Mariner Industries, Inc., supra,* 27 B.R. 1004, 10 B.C.D. at 285 stated that the determination of what will constitute adequate protection during the interim period between date the petition in bankruptcy is filed and the confirmation of the plan involves a balancing of factors. In that case it was determined that less was required in terms of adequate protection when the secured creditor's rights in the collateral are interfered with only for a short time. In that case the creditor sought relief from stay approximately two months after the case had been filed. The creditor therein was vastly undersecured from the date of filing. In our opinion, the facts of the case at bar distinguish this case from *American Mariner Industries, Inc.,* and they justify a different result in the balancing process the Court is to perform.

■■■■■ The Court notes in its consideration of the equities in this case that:

1. The Code is meant to give Chapter 11 debtors special protection, especially in the early phase of the bankruptcy, in order to facilitate reorganization. In this case debtors have had time to develop a plan. The Code provides debtors an exclusive 120-day period to propose a plan. We are long past that point, and there is still not a disclosure statement nor plan on file.

2. The debtors continue to use the collateral to produce money. The collateral is suffering some amount of depreciation during this period of time. The debtors should not be able to use this creditor's collateral to earn new money while at the same time the

ability of the collateral to satisfy the claim the creditor had on the date of filing is diminishing. Congress did intend that secured creditors receive the benefit of their bargain. While that does not mean that the creditor must receive the benefit in kind, and does not mean that the creditor's interest must be protected from any impairment, it does mean that the basic status quo should be maintained during the interim from date of petition to confirmation.

3. It is too early in the process to close off the possibility of reorganization for these debtors. They presented testimony that land values will rise. They suggest that they will be able to operate profitably. If the Court did not modify the stay as it has herein, it would be obligated to terminate the stay for lack of adequate protection and allow foreclosure. Foreclosure would kill any chance of reorganization.

4. Had the debtors already proposed a plan, it would have had to provide for the secured claim of plaintiff either by satisfying the claim or by giving plaintiff the *present value* of its claim paid out over time. Such value would include an interest factor for the delayed realization of its claim. Failure to have a plan ready has meant that the plaintiff has received neither satisfaction nor interest payments.

In conclusion, based on Congress' clear intent and purpose in establishing adequate protection as a flexible concept to be applied by the Court depending on what "is appropriate to the circumstances of the case" to grant such "relief as will result in the realization by the protected entity of the value of its interest in the property involved," H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 340 (1977), U.S.Code Cong. & Admin.News, p. 6296 (reprinted in Collier on Bankruptcy, Appendix, 15 Ed. 1982), and based upon the Court's careful balancing of the equities in this case and the Court's inherent authority to allow and disallow claims, the Court concludes that in this case the scope of adequate protection includes monthly payments of interest for the continued use of the plaintiff's collateral.

Accordingly, the Court hereby modifies the automatic stay to the extent that the debtors are required to pay to the plaintiff $11,000 per month, retroactive to the date of the complaint for relief from stay.[9] The amount due for the month in which the complaint was filed is to be pro-rated based on the date the complaint was filed (November 5, 1982). The first monthly payment will be due June 1, 1983. The arrearage in payments created as a result of this order is payable on October 1, 1983.

SO ORDERED.

---

9. Although plaintiff's complaint could be read as requesting retroactive payments to the date the bankruptcy petition was filed, the Court declines to make the adequate protection payments retroactive to that date because at that point in time sufficient cause for relief from stay did not exist.