**In re HERITAGE NORTH DUNLAP TRUST, Heritage North Elm Trust, Heritage Rambler South Road Trust, Clipper Eastern Harbor Trust, Clipper Strathmore Trust, Heritage Rambler New Bedford Trust, Northern Constitu-**tion Trust, Heritage Northern Clipper Corporate Tr., Heritage Clipper Riverbend Trust, Heritage Old Nashua Trust, Northern Bedford Trust, Northern Amherst Trust, Granite Hopewell Farms Trust, Northern Flanders Trust, Debtors.

**Bankruptcy Nos. 90–10603–HAL (NH) to 90–10605–HAL(NH), 90–10606–HAL(MA) to 90–10608–HAL(MA), 90–10609–HAL(NH), 90–10610–HAL(NH), 90–10611–HAL(SC), 90–10612–HAL(NH) to 90–10614–HAL(NH), 90–10615–HAL(MA) and 90–10616–HAL(NH).**

United States Bankruptcy Court,
D. Massachusetts.

May 15, 1990.

---

Neal E. Satran and Nina M. Parker, Satran & Marino, Boston, Mass., for debtors.

Deborah S. Griffin, Peabody & Arnold, Boston, Mass., for Bank of New England.

## MEMORANDUM ON MOTIONS OF BANK OF NEW ENGLAND TO DISMISS

HAROLD LAVIEN, Bankruptcy Judge.

These cases come before this Court on motions by the secured creditor, Bank of New England ("BNE") to dismiss debtors' Chapter 11 petitions on the contention that the various debtor trusts are not partnerships, business trusts, or any other entity entitled to the protection of Chapter 11, and on the contention that the petitions were not filed in good faith.

Facts:

On January 31, 1990, Stephen M. Chapman, as one of the trustees, filed a single petition for relief under Chapter 11 of the Bankruptcy Code. This petition was captioned "Stephen M. Chapman, as he is Trustee of", and then listed 28 trusts and one limited partnership. The filing occurred immediately following the date BNE, whose mortgages were in default, took possession of the property of eight of these trusts. Based on the debtors' counsel's representations that there were 28 individual business trusts, on February 12th, the Court dismissed what appeared to be an inappropriate joint filing. Debtor immediately filed 29 separate Chapter 11 petitions and BNE, again, filed Motions to Dismiss.

On April 4, 1990, this Court dismissed 15 of those 29 petitions upon the assents to dismissal of the various debtors in those cases. BNE sought to withdraw its Motions to Dismiss as to the remaining cases; however, the Court denied its withdrawals since the issue goes to the Court's jurisdiction over the remaining cases.

Fourteen trusts now remain before this Court for consideration. Of those debtors, four purport to be Massachusetts entities, nine purport to be New Hampshire entities and, one, a South Carolina entity. The 14 debtors are, in essence, identically structured with Stephen M. Chapman as one of the trustees and as a beneficiary. There is, however, little information regarding the schedules of beneficiaries of the various trusts. They are purported to exist by the trust instruments, but they are not in evidence nor have they been identified in the debtors' extensive briefing.

The debtors maintain that they are "business trusts" for the purposes of 11 U.S.C. § 101(8)(A)(v). Each debtor is a single asset entity holding real property and the personal property associated with that real estate. An associated entity, Haven Realty Corp., d/b/a Heritage Associates, performs all day-to-day management duties and functions on behalf of the debtors.

The 14 individual petitions now before this Court were filed in the names of the various trusts and all were identified by the single Social Security number of Stephen M. Chapman; however, in briefs of the debtors, the trusts are identified by separate federal tax identification numbers.

■ Before this Court is, also, the uncontroverted evidence from the affidavit of Ruth W. Davis, that the Massachusetts debtor trusts were not on record with the Office of the Secretary of the Commonwealth of Massachusetts as a Massachusetts business trust and that the Massachusetts debtors had never filed annual reports with the Secretary of the Commonwealth. There is, also, uncontroverted evidence in the affidavits of Ruth W. Davis, that the debtors had not filed a "doing business as" certificate with the municipality in which they were located. The trusts at hand have not issued transferable shares although, in their briefs, the debtors maintain that beneficial interests may be and, in some cases, have been transferred. The debtors, in their briefs, also argue that the trusts are business trusts because they were formed for a "business purpose." In support of their contention that the trusts were formed for business purposes, the debtor listed activities of the trustees:

(a) performance of market analysis

(b) assessment of physical studies recording mechanical, structural and electrical systems of the property

(c) verification and appraisals of the purchase price

(d) meeting and planning re. capital expenditures

(e) analysis of properties' potential profitability.

The business plan outlined by all 14 debtors was to "pursue and acquire class 'B' properties ... which had been either neglected, poorly managed, introduced to the marketplace at the wrong time or poorly marketed ... for the purpose of enhancing its value through extensive upgrading and improvements ... through a closely supervised management team." In all cases, the management team was not the trustees but a separate entity known as Heritage Associates.

Certainly, the fact that investors carefully considered the relative economic advantages and disadvantages of a survey of properties before acquisition does not distinguish these cases from the facts underlying a typical nominee trust. The fact remains that the "business plans" of the trusts consisted of acquiring a promising property and contemplated improvements to be implemented by a management company and not the trust entities, which functioned as little more than vehicles for holding title to the real property. The trustee/beneficiary, Stephen M. Chapman, together with other trustee/beneficiaries, infused capital and made or influenced management decisions.

The trust instruments do not identify the beneficiary or beneficiaries. It does note that a schedule of beneficial interests is filed with the trustee. No such lists have been made a part of the record or included in the briefs. The Massachusetts trust documents do address the transfer of beneficial interests but create no transferable shares, stating only that the trustee "shall not be affected by any assignment or transfer of any beneficial interest until receipt by the Trustee of Notice that such assignment or transfer has in fact been made...." The declarations of trust also direct "that the trustee shall have no power to deal in or with the trust estate except as directed by the beneficiaries."

There is little dispute over the inability of a nominee trust to file a bankruptcy petition since it is merely a tax device for holding and preserving investment property while limiting liability, simplifying title transfers and preserving anonymity of beneficiaries. *Pope & Cottle Co. v. Fairbanks Realty Trust*, 124 F.2d 132 (1st Cir.1941); *Cantor v. Wilbraham*, 609 F.2d 32 (1st Cir.1979); Birnbaum & Monahan, *The Nominee Trust in Massachusetts Real Estate Practice*, 60 Mass L.Q. 364 (1976).

The debtors claim that they are business trusts and, therefore, eligible to file under the definition of corporation as it now appears in 11 U.S.C. § 101(8)(A)(v). The section simply says "a business trust." Section 301 provides that only a person may file and § 101(3) includes corporations within the definition of persons. Therefore, a business trust is a person eligible to file. Unfortunately, the Bankruptcy Code does not define a business trust. We do know that in 1978, the Code amended the previous definition Par. 1(8) by elimination of the words "wherein beneficial interest or ownership is evidenced by certificates or other written instrument."

Since the Code does not define what constitutes a business trust, we look to state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). In Massachusetts, we have a specific statute setting forth the necessary requirements for entities to be considered business trusts. Mass.Gen.Laws ch. 182 recognizes the existence of business trusts as voluntary associations and imposes both rights and obligations. There must be a written instrument, transferable shares, recordation with the Secretary of State and with the Clerk in very city or county where the trust has a place of business. Where the states tell you what you must do to be a business trust, that is what you must do! *L & V Realty Trust*, 61 B.R. 423 (Bankr.D. Mass.1986); Massachusetts Business Trust, 88 A.L.R. 3rd 704 (1978).

The four Massachusetts trusts are not business trusts and are not eligible to file bankruptcies and the cases are dismissed.[1]

90–10606–HAL Heritage Clipper Eastern Harbor Trust

90–10607–HAL Clipper Strathmore Trust

90–10608–HAL Heritage Rambler New Bedford Trust

90–10615–HAL Granite Hopewell Farms Trust

*Village Green Realty Trust,* 113 B.R. 105 (Bankr.D.Mass.1990).

█ As to the nine New Hampshire cases, of course, the Massachusetts statutory sections do not apply, and Judge Yakos' opinion, *In re Gonic Realty Trust,* 50 B.R. 710 (Bankr.D.N.H.1985) would, at first blush, seem to require a different result. However, a careful analysis of that opinion makes it clear that the results turned on its particular facts. There is nothing in that opinion that suggests that the facts in this case should lead one to believe the New Hampshire Bankruptcy Court would find these trusts to be business trusts. In *Gonic,* the trustee was fully empowered to conduct the business of running this mill property's several buildings of 163,000 square feet and a separate office building of 3,050 square feet, all on land in excess of 23 acres with another parcel of 10 acres which included hydroelectric rights and over $100,000 of machinery and equipment and that he operated the complex. The beneficial interest was fully transferable though not in certificates and, although the beneficiary could terminate the trust and direct accrued payments of principal and interest, there was otherwise no provision making the trustee's power subject to the will of the beneficiaries. Key to this decision, *Gonic* ran the operation personally while, in our cases, not only is all trustee power made expressly subject to the direction of the trust beneficiaries, the trust had no part in the day-to-day operation of the property which was performed by a separate entity, Heritage Associates. The trust was simply a convenient method of holding and preserving the investment in the property for the investors. These nine New Hampshire trusts were not business trusts and, therefore, the cases must be dismissed.

90–10603–HAL Heritage North Dunlap Trust

90–10604–HAL Heritage Northern Elm Trust

90–10605–HAL Heritage Rambler South Road Trust

90–10609–HAL Northern Constitution Trust

90–10610–HAL Heritage Northern Clipper Corporate Trust

90–10612–HAL Northern Old Nashua Trust

90–10613–HAL Northern Bedford Trust

90–10614–HAL Northern Amherst Trust

90–10616–HAL Northern Flanders Trust

The South Carolina trust, Heritage Clipper Riverbend Trust, No. 90–10611–HAL, should also be dismissed under the statutory presumption that since no contrary evidence has been offered, South Carolina law is the same as Massachusetts law. Nonetheless, this Court will withhold action on this case and allow counsel 15 days to supply any South Carolina law that it deems relevant.

---

1. For the possibility of filing as a partnership with, of course, each of the partners having individual liability. *See Medallion Realty Trust,*

103 B.R. 8 (Queenan, J., W.D.Mass.1989) *affirmed and expounded upon by D.J. Mazzone,* 120 B.R. 245).