**In re L.G. SALEM LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 91–13345–JNG.**

United States Bankruptcy Court, D. Massachusetts, E.D.

May 19, 1992.

Peter J. Haley, Gordon & Wise, Boston, Mass., for debtor.

Eduardo C. Robreno, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for Mortg. and Realty Trust.

## DECISION ON CONFIRMATION AND MOTION FOR RELIEF

WILLIAM C. HILLMAN, Bankruptcy Judge.

This matter came on to be heard upon the issue of confirmation of the plan of reorganization of L.G. Salem Limited Partnership ("Debtor") and the motion of Mortgage and Realty Trust ("MRT") for relief from the automatic stay or for dismissal of the case. Confirmation of the plan would require denial of the motion for relief or dismissal as the property with which MRT is concerned is the primary asset of Debtor. If the plan is not confirmed, consideration must be given to the motion for relief or dismissal.

*Findings of Fact*

The facts upon which these determinations must be made are not significantly in dispute. The Court finds as follows:

1. Debtor is a Massachusetts limited partnership. It is the sole beneficiary of L.G. Salem Realty Trust, a nominee trust ("Salem").

2. Debtor filed its original petition under Chapter 11 on April 19, 1991.

3. Debtor's primary asset is a parcel of commercial real estate in Salem, New Hampshire consisting of over 125,000 square feet of rental space ("the Property"). Title to the Property is in the name of Salem.

4. MRT holds mortgages on the Property with an aggregate principal balance of over $6,800,000. MRT also holds recorded assignments of leases and rents but no effort was made to reduce rents to possession in this proceeding.[1]

5. In addition to its indebtedness to MRT, Debtor has unsecured liabilities of approximately $200,000.

6. The Property was appraised as of October 1, 1991, at a value of $4,875,000. The appraiser has subsequently submitted an affidavit indicating that the Property is continuing to decline in value at a rate of 10% per year. Debtor has not suggested otherwise. Assuming that rate of decline, the appraised value at the confirmation hearing date would be $4,611,000.

7. Debtor has made monthly adequate protection payments of approximately $40,-000 during recent months, and had over $134,000 on hand as of February 29, 1992.

8. There are very substantial tenant rent arrears. As of April 1, 1992, Milspec Manufacturing owed $139,514.70 and The Lovoi Group $210,246.68. Both are government contractors with irregular incomes.

*The Proposed Plan of Reorganization*

Debtor's plan divides its creditors into four classes:

Class 1: Priority claims including real estate taxes.

---

**1.** *See In re Harvey Road Assoc. VIII,* 140 B.R. 302 (Bankr.D.Mass.1992).

Class 2: MRT's secured claim.

Class 3: Unsecured creditors.

Class 4: General and limited partners.

The plan treats the classes as follows:

Class 1: Cash in full within 30 days of confirmation.

Class 2: MRT will retain its lien on the property in the full amount of its claim, for which it will receive two notes, the first for its pre-petition principal balance of $6,802,-550.95, and the second to the amount of interest and late charges allowed by the Court, which Debtor estimates at $491,-081.49.

The principal note will require the payment of interest only for 36 months at 9% per annum. No payments will be required on the second note other than the prepayment of one year's interest at 9%.[2]

The repayment provisions are somewhat convoluted. At the end of the 36–month term the Debtor shall pay in satisfaction of the two notes the greater of (a) $4,875,000; (b) 80% of the appraised value of the property at the time of payment; or (c) in the event of sale, the net sale proceeds up to the allowed claim amount.

Further, if MRT does not receive its full allowed claim under the formula of the preceding paragraph, the shortfall will be converted into a new class of partnership shares, superior in right of payment to the prepetition partners until MRT has received the full amount of its claim.

Class 3: Payment in full via four annual payments commencing on the first anniversary of confirmation.

Class 4: A new class of partnership interests subordinate to payment in full (as specified) of all other classes.

*Discussion of Plan of Reorganization*

■ An accepting impaired class of claimants is essential to confirmation. 11 U.S.C. § 1129(a)(10). Class 1 is not impaired as its members will receive cash in full. 11 U.S.C. § 1124.

As Class 2 rejected the plan and Class 4 is a class of interests and not of claims, neither qualifies under 11 U.S.C. § 1129(a)(10).

The plan provides that Class 3, the unsecured creditor body, will receive payment in full via four annual payments commencing on the first anniversary of confirmation. Since this is not payment consistent with general creditor rights, nor cash equal to the allowed amount of such claim on the effective date, Class 3 is impaired. 11 U.S.C. § 1124.

■ It is next necessary to consider the plan's treatment of MRT. The Code requires that MRT, the sole member of a class which has rejected the plan, must be treated in a fair and equitable manner. 11 U.S.C. § 1129(b)(1).

Since MRT is a secured creditor, a fair and equitable plan must conform, at a minimum, to 11 U.S.C. § 1129(b)(2)(A), which requires that the plan must satisfy one of the following three "cramdown" criteria:

(i) that the holders of such claims retain the liens securing such claims ... to the extent of the allowed amount of such claims *and* that each holder ... receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property.

(ii) that the property be sold free and clear of liens with such liens to attach to the proceeds.

(iii) that the holders realize the indubitable equivalent of such claims.

Debtor appears to be attempting to satisfy the first requirement as it offers MRT the face amount of its claim plus a market rate of interest.[3] However, it gives with one hand and takes away with the other. The notes to MRT, aggregating $7,293,-632.44, plus interest, may be satisfied by payment in 36 months of only $4,875,000 plus an equity interest for the balance.

---

**2.** Debtor has indicated that if the Court finds 9% to be a below market rate for the risk involved, it would be willing to increase that rate.

**3.** See note 1.

What the plan accomplishes, without saying so, is to bifurcate MRT's claim into its secured and unsecured elements. The secured claim will be paid in full and the unsecured portion in cash to the extent the property increases substantially in value, or in an equity interest if the real estate market does not make a giant leap upward. The net effect of the maneuver is to place the unsecured, deficiency, claim in Class 4, rather than in Class 3.

This Court has indicated from the bench that it believes *Granada Wines, Inc. v. New England Teamsters, etc., Pension Fund*, 748 F.2d 42 (1st Cir.1984) makes such treatment impermissible. In *Granada* the Circuit Court held that "all creditors of equal rank with claims against the same property shall be placed in the same class." *Id.* at 46. Debtor's plan would separate unsecured claims which must be treated equally. This approach has recently been rejected by Judge Goodman, *In re Cantonwood Associates L.P.*, 138 B.R. 648, 22 B.C.D. 1350 (Bankr.D.Mass.1992), and the Court adopts both his decision and his reasoning, rather than that expressed on this point in *In re Bjolmes Realty Trust*, 134 B.R. 1000 (Bankr.D.Mass.1991).

As one commentator has related,

Congress was also aware that a debtor may attempt to contrive an accepting class of impaired claims by classifying the mortgagee's unsecured deficiency claim in one class and all other unsecured claims in another class. Usually, the debtor will have a bunch of friendly trade creditors who will go along with the plan because they have nothing to lose or because their claims are small and the debtor offers them substantial repayment. Congress provided, however, that if any class rejects a plan, such as the class containing the mortgagee's unsecured deficiency claim, then the plan may not unfairly discriminate. Accordingly, the debtor would not be allowed to provide one treatment for the class of unsecured trade claims and a less favorable treatment to the class containing the mortgagee's unsecured deficiency claim.

M. Bienenstock, *Bankruptcy Reorganization* 603 (1987).

This is also the view of *In re Greystone III Joint Venture*, 948 F.2d 134 (5th Cir. 1991) (as amended).

Debtor's plan would satisfy *Granada* only if the MRT deficiency claim were placed in Class 3. MRT has expressly stated that it will not approve a plan of reorganization proposed by this Debtor for reasons connected with its past relationship with the Debtor and its principals. A plan which places MRT's unsecured deficiency claim in Class 3 would be rejected by that class.[4] There would be no accepting impaired class of claims.

Under these circumstances, a plan cannot be confirmed.

### The Motion for Relief from Stay

■ A motion for relief from stay should be granted if the debtor has no equity in the property and it is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2). It is agreed that there is no equity in the property. The Supreme Court has held that the latter requirement demands "a reasonable possibility of a successful reorganization within a reasonable time." *United States Ass'n v. Timbers of Inwood Forest Assoc. Ltd*, 484 U.S. 365, 375, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988).

It is the Court's conclusion that, given the attitude of MRT, no plan can be confirmed at this or any other time. It follows, therefore, that the motion for relief from stay must be granted.

---

**4.** Debtor appears to be valuing the secured claim at the 1991 appraised value of $4,875,000. As noted above, the appraisal on a current basis would be $4,611,000. In either case, the amount overwhelms in voting strength the $200,000 in other unsecured creditors.