**In re AMERISWISS ASSOCIATES, Debtor.**

**Bankruptcy No. 92–15869–BKC–SMW.**

United States Bankruptcy Court, S.D. Florida, Miami Division.

Nov. 10, 1992.

Scott L. Baena, Miami, FL, for debtor.

Herbert Stettin, Miami, FL, for Sherry Frankel, Trustee.

## ORDER AUTHORIZING DEBTOR'S USE OF RENTS

SIDNEY M. WEAVER, Chief Judge.

THIS CAUSE came on to be heard by the Court on October 19, and 26, 1992, upon the motion of the debtor, Ameriswiss Associates ("Ameriswiss" or the "Debtor"), to use cash collateral. The Court having heard the testimony and observing the demeanor of witnesses presented; having considered the evidence adduced; having

heard the argument of counsel; and, being fully advised in the premises, renders its finding of facts and conclusions of law as hereinafter stated.

## I. FINDINGS OF FACT

Ameriswiss commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 6, 1992 (the "Petition Date"). Ameriswiss continues to manage its property and operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

The Debtor's business is the management and operation of a Class A office building commonly known as "1221 Brickell Avenue" (the "Property"). The Property consists of 395,395 square feet of rentable space which, at the Petition Date, was approximately 92% rented, generating rental income of more than $7 million, on an annual basis, together with income from tenant parking and pass-throughs of approximately $725,000, annually (the "Rents").

Record title to the Property is in the name of City National Bank of Florida as Trustee (the "Trustee") under an Illinois-type land trust established pursuant to Florida law (the "Trust"). Ameriswiss is the sole beneficiary of the Trust. Pursuant to the express terms of the Trust, Ameriswiss has the sole power (i) "of direction to deal with the title to [the Property]," (ii) to "manage and control [the Property]" and (iii) to "receive the proceeds from rentals, sales, mortgages or other disposition of [the Property]."

The Property is encumbered by a first mortgage (the "First Mortgage") which secures a loan made by Mellon Bank, N.A. ("Mellon") on or about October 12, 1983 (the "First Mortgage Loan"). The current principal balance of the First Mortgage Loan is approximately $77,250,000. On or about August 4, 1992, Mellon sold and assigned the First Mortgage Loan and the First Mortgage to Sherry Frankel, as Trustee ("Frankel").

As additional collateral for the First Mortgage Loan, Ameriswiss granted an Assignment of Rentals and Leases to Mellon at the date of the First Mortgage Loan. The Assignment was supplemented on September 12, 1984 and January 30, 1987.

Ameriswiss (not the Trustee) executed each lease entered into in connection with the Property as "Lessor". Each of the leases was expressly approved by Mellon prior to its consummation without any requirement that the Trustee be named as lessor or even co-lessor thereunder.

The Property is further encumbered by a second mortgage (the "Second Mortgage"). The Second Mortgage secures a loan made by Mevabi, B.V. ("Mevabi") on or about November 20, 1985 (the "Second Mortgage Loan"). The current principal balance due under the Second Mortgage Loan is approximately $1,186,284.

On or about August 19, 1992, Frankel sent Ameriswiss a letter purporting to demand payment of the Rents pursuant to Fla.Stat. § 697.07. There is no evidence that Frankel sent any demand letter to the Trustee, or even provided the Trustee with a copy of the purported demand letter sent to Ameriswiss. Mevabi did not make any demand for the Rents whatsoever prior to the Petition Date.

On September 22, 1992, Frankel commenced a foreclosure action in the Dade County Circuit Court against the Trustee, Ameriswiss and others (the "Foreclosure Action").

On September 25, 1992, Ameriswiss commenced an action (the "Ameriswiss Action") in the Dade County Circuit Court against Frankel, her principals, and others based on Frankel's alleged tortious conduct in acquiring the First Mortgage Loan.

Frankel did not obtain an order sequestering the Rents or an order appointing a receiver for the Property or the Rents prior to the Petition Date.

## II. CONCLUSIONS OF LAW

The bases for Frankel's opposition to Ameriswiss's motion are that (i) this Court

lacks jurisdiction over the Rents because Ameriswiss is neither the legal nor equitable owner of the Property; and (ii) by virtue of the demand made by Frankel under Fla.Stat. § 697.07 (1991), there was an absolute transfer of the Rents to Frankel prior to the Petition Date.

The Court disagrees.

**(A)** *The rents are property of the Debtor's estate*

 Frankel contends that a beneficiary's interest under a land trust agreement is personalty rather than realty, and thus, that the Rents are not property of the Debtor's estate. Frankel principally relies upon the decision of the United States Court of Appeals for the Seventh Circuit in *Matter of Gladstone Glen*, 628 F.2d 1015 (7th Cir.1980); however, the ultimate holding of that case supports the Debtor's position:

> Illinois law's characterization of the beneficiary's interest as personal property without legal or equitable title to the realty is not controlling for purposes of federal law. Looking to the substance of the matter, we hold that the beneficiary of a land trust is the 'equitable owner of real property' within the meaning of the [Bankruptcy Code].

*Id.* at 1019.[1]

*Gladstone Glen*'s progeny have followed the same "substance over form" doctrine and have uniformly reached the same conclusion. As noted in *Matter of Pentell*, 777 F.2d 1281, 1284 (7th Cir.1985):

> [I]n applying the 'substance over form' doctrine to 'Illinois-type' land trusts the beneficiaries' equitable interest in the trust made the real property part of the debtor beneficiary's estate. This is true as a matter of federal bankruptcy law regardless of how the state characterizes the actual legal ownership of the property.

*Id.* at 1284.

The same result was reached in *Matter of Langley*, 30 B.R. 595, 598 (Bankr. N.D.Ind.1983), a case with pertinent facts virtually identical to those at issue here. Like Ameriswiss, the debtor in *Langley* was the sole beneficiary under a land trust agreement. *Id.* at 597. Pursuant to the terms of the land trust agreement, the debtor reserved (i) all power to direct the trustee to deal with the property, (ii) the power to manage, possess, use and control the property, and (iii) the right to receive the earnings, avails and proceeds from leases and other uses. *Id.* The creditor in *Langley* sought relief from the automatic stay, arguing that (i) the debtor had no interest in the trust *res* because under the terms of the trust, the trustee held legal and equitable title, and (ii) although the debtor had an interest in the earnings, this interest was only an interest in personal property and could not subject the land to the jurisdiction of the bankruptcy court. *Id.*[2]

The *Langley* court rejected the creditor's argument. *Id.* at 600. The court held that:

> [A]t least in a case where the debtors are the only beneficiaries of an Illinois type land trust, the ownership interest makes the res of the trust property of the estate
>
> . . .
>
> This result is further supported by the fact that the debtors-in-possession succeed, as would the trustee, to all the powers and rights held by the debtors on the date of filing their petition in bankruptcy.... Further, the debtors have a beneficial interest in the proceeds of the sale of the rest of the trust. Clearly that interest is property of the estate. Thus even if the property were sold pursuant to a postpetition foreclosure sale, the proceeds would be property of the estate, subject to distribution through the bankruptcy laws.

---

**1.** Florida's land trust law is modeled after the Illinois land trust law and specifically allows for the creation of Illinois-type land trusts such as the trusts at issue in both *Gladstone Glen* and the instant case.

**2.** It should be noted that in *Langley,* the issue was relief from the automatic stay and the moving creditor did not argue that the rents derived from the trust *res* were not property of the debtor's estate.

*Id.*[3]

Accordingly, pursuant to both the terms of the Trust and applicable decisional law, the Rents are property of Ameriswiss's bankruptcy estate. 11 U.S.C. § 541.

### (B) *Notice was given by Frankel pursuant to Fla.Stat. § 697.07 (1991)*

Fla.Stat. § 697.07 (1991) provides that: A mortgage may provide for an assignment of rents. If such assignment is made, such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand made by the mortgagee. Upon application by the mortgagee, a court of competent jurisdiction may require the mortgagor to deposit such rents in the registry of the court pending adjudication of the mortgagee's rights to the rents, any payments therefrom to be made solely to protect the mortgaged property and meet the mortgagor's lawful obligations in connection with the property.

■ The Debtor argues that Frankel's notice pursuant to the foregoing statute was ineffective since Frankel served the notice on the Debtor and not on the Trustee/mortgagor. However, the Court having concluded that the Rents are property of the Debtor's estate, notice to the Debtor alone would be sufficient for purposes of Fla.Stat. § 697.07.

■ The Debtor further argues that it was not in default under the First Mortgage Loan at the time Frankel gave notice and that, as a result, the notice was premature and ineffective. The Court does not, however, feel constrained to make such a determination at this juncture. The Debtor has not disputed that it did not make the August, 1992 interest payment to Frankel. Rather, the Debtor argues that such payment was excused by virtue of Frankel's

conduct in acquiring the First Mortgage Loan from Mellon. Whether that is so will presumably be determined in the Ameriswiss Action. The fact that the payment was not made is all that is relevant to the applicability of Fla.Stat. § 697.07.

Accordingly, the Court deems that notice was given by Frankel to Ameriswiss pursuant to Fla.Stat. § 697.07.

### (C) *Fla.Stat. § 697.07 (1991) effects an absolute transfer of rents*

■ This Court has previously held that Fla.Stat. § 697.07 "is intended to create an absolute transfer of the income stream to the mortgagee, upon default and written demand to the mortgagor." *In re 163rd Street Mini Storage, Inc.,* 113 B.R. 87, 90 (Bankr.S.D.Fla.1990). *Accord In re Aloma Square, Inc.,* 85 B.R. 623 (Bankr.M.D.Fla. 1988). The Court continues to be of that opinion.

The Court does not feel constrained to follow the contrary opinions of Florida's intermediate appellate courts in *Nassau Square Associates, Ltd. v. Insurance Comm'r of State of Cal.,* 579 So.2d 259 (Fla. 4th DCA 1991), and *Oakbrooke Associates, Ltd. v. Insurance Comm'r of State of Cal.,* 581 So.2d 943 (Fla. 5th DCA 1991).

### (D) *Fla.Stat. § 697.07 (1991) is substantive and, therefore, is not retroactive*

■ While Fla.Stat. § 697.07 engenders a notice-type procedure triggering an absolute transfer of ownership of rents upon demand, the effect of the statute is to change the substantive property rights of an assignor and assignee in respect of assigned rents. As such, in the context of statutory interpretation, the statute is not merely procedural but rather, substantive in effect. *In re Camelot Associates Ltd.*

---

**3.** Frankel also refers to the Fourth Circuit's decision in *In re Korangy,* 927 F.2d 596 (No. 89–2864, 1991 WL 24312, 1991 LEXIS 3179) (4th Cir.1991). The decision in *Korangy* is not, however, inconsistent with the holdings in *Gladstone Glen* and *Langley.* In *Korangy,* there were multiple beneficiaries of a land trust. The court applied the "substance over form" doctrine enunciated in *Gladstone Glen* to conclude that

the subject land trust created a partnership among the various beneficiaries. *Korangy,* 1991 WL 24312 at 3, 1991 LEXIS 3179 at 8. As such, a single partner's filing of a bankruptcy petition was insufficient to bring the partnership property within his individual bankruptcy estate. This distinction was expressly recognized in *Langley* and is inapposite to the facts of the case *sub judice.*

*Partnership,* 102 B.R. 161, 165–166 (Bankr. D.Minn.1989).

■ It is axiomatic under Florida Constitutional law that a statute affecting substantive rights cannot be applied retroactively, and accordingly, Fla.Stat. § 697.07 does not govern the enforcement of assignment of rents prior to its effective date (i.e., October 1, 1987). *In re Thymewood Apartments, Ltd.,* 129 B.R. 505, 512 (Bankr.S.D.Ohio 1991); *Accord Camelot Associates, supra.*

■ Accordingly, the Court concludes that the notice given by Frankel to Ameriswiss pursuant to Fla.Stat. § 697.07 was ineffectual to create an absolute transfer of the Debtor's interests in the Rents to Frankel inasmuch as the Assignment of Rentals and Leases and all supplements thereto were executed by the Debtor in favor of its first mortgage lender prior to the effective date of the statute.

(E) *Frankel's interest in rents is determined by reference to applicable common law*

■ Having concluded that Frankel's notice pursuant to Fla.Stat. § 697.07 was ineffectual in creating an absolute transfer of the Debtor's interest in the Rents since the statute post-dates the operative contracts of assignment, Frankel's rights in the Rents is governed by applicable common law. *In re 163rd Street, supra* at 88–89; *White v. Anthony Inv. Co.,* 119 Fla. 108, 160 So. 881, 882 (1935).

Prior to the enactment of Fla.Stat. § 697.07, Florida common law provided that an assignee of rents was not entitled to any of the rents and profits derived from the property unless it had obtained an order of sequestration or actually taken possession of the property, either by consent or the appointment of a receiver. *Id.* Frankel failed or, at least, was unable to do so. Thus, Ameriswiss continues to be the owner of the Rents.

It is therefore,

ORDERED AND ADJUDGED that the Debtor shall be and hereby is authorized to use the Rents subject only to the limitations generally imposed upon debtors in possession in the conduct of their businesses by the Bankruptcy Code. 11 U.S.C. § 101 et seq.

DONE AND ORDERED.