## In re EASTMARE DEVELOPMENT CORP., Debtor.

### Bankruptcy No. 92–18004–JNF.

United States Bankruptcy Court, D. Massachusetts, E.D.

Feb. 1, 1993.

Paul D. Nachtwey, Boston, MA, for debtor.

Charles R. Bennett, Boston, MA, for Baybank.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the "Motion to Set Aside Mortgage Foreclosure and For Contempt and For Sanctions for Violation of the Automatic Stay" (the "Motion"). Eastmare Development Corporation ("Eastmare" or the "Debtor"), purportedly doing business as Riverside Historical Realty Trust (the "Trust"), filed the Motion on August 6, 1992, two days after it sought protection under Chapter 11 of the Bankruptcy Code.

On August 27, 1992, the Court conducted a hearing on the Motion and the opposition filed to it by BayBank. At that time, the Court denied the Motion in so far as it sought an order either finding BayBank in contempt for violating the automatic stay or sanctioning BayBank for the same alleged conduct. The Court then ordered the parties to file an agreed statement of facts and briefs with respect to the Debtor's motion to set aside the foreclosure sale.

The parties have complied with the Court's bench order and have filed a Stipulation of Agreed Facts with pertinent exhibits attached. Neither party has requested an evidentiary hearing. Accordingly, the Motion may be considered one for summary judgment, as there are no material facts in dispute. *See* Federal Rule of Bankruptcy Procedure 7056.[1] Although

the Court notes that the relief requested by the Debtor with respect to setting aside the mortgage foreclosure sale properly should have been brought by way of an adversary complaint, *see* Federal Rule of Bankruptcy Procedure 7001, no purpose is served at this time by requiring the Debtor to file and serve an adversary complaint on Bay-Bank. *In re Commonwealth Mortgage Co., Inc.*, 145 B.R. 368 (Bankr.D.Mass. 1992). Accordingly, the Court shall rule on the Motion.

### II. FACTS

The Debtor is a Massachusetts corporation that was organized on October 1, 1987. Peter Bailey ("Bailey") is its President, Treasurer, Clerk, and Director. The Debtor holds 100% of the beneficial interest of the Trust. The Trust is a duly recorded Massachusetts nominee trust created by Declaration of Trust dated October 15, 1987. Bailey is currently the sole Trustee of the Trust.

Eastmare Corporation, Ltd. ("Limited") was a Massachusetts corporation organized on October 20, 1978. Limited was dissolved on December 31, 1990. Prior to its dissolution, Bailey was the President, Treasurer, Clerk, and Director of Limited.

On October 15, 1987, Ruth A. Webster granted to Robert P. Doherty, Jr. ("Doherty"), as Trustee of the Trust, a quitclaim deed to eleven parcels of land, together with the buildings and improvements thereon, known and numbered as 346–352 Merrimack Street, Newburyport, Massachusetts ("the Newburyport Property"). The Debtor, Limited, and Bailey have never held legal record title to the Newburyport Property.

On September 24, 1987, BayBank issued a commitment letter to Limited or an acceptable nominee for a loan in the amount of $2,400,000. On October 15, 1987, Doherty, as Trustee of the Trust, executed a note (the "Note") payable to BayBank in that amount. To secure its obligations to Bay-Bank, the Trust, simultaneously with the

---

1. United States Bankruptcy Judge James A. Goodman for the District of Maine, sitting by designation, conducted the initial hearing in this matter.

execution of the Note, granted BayBank a Construction Mortgage, Security Agreement, and Assignment with regard to the Newburyport Property. The Construction Mortgage securing the Note was a first mortgage. Doherty, as Trustee, also executed UCC–1 Financing Statements which BayBank filed with the appropriate local and state authorities, thereby perfecting its security interest in the personal property of the Trust.

On October 15, 1987, the Debtor also executed and delivered to BayBank a Guaranty of the obligations of the Trust to BayBank. Limited is obligated to BayBank pursuant to a Commercial Note dated July 22, 1988 in the original amount of $300,000.00. On February 23, 1989, Andre R. Coutourier, as Trustee of the Trust, executed and delivered to BayBank a Guaranty of the obligations of Limited to BayBank. On February 23, 1989, the Trust granted BayBank a Mortgage, Security Agreement, and Assignment to secure its obligations pursuant to the Guaranty of the obligations of Limited to BayBank.

On August 4, 1992, a voluntary Chapter 11 proceeding, captioned *Eastmare Development Corporation, d/b/a Riverside Historical Realty Trust (Peter A. Bailey, Trustee)*, Case No. 92–18004, Chapter 11, was filed with this Court. Although the caption of the bankruptcy case suggests that the Debtor did business as the Trust, the Debtor never filed with the Newburyport Town Clerk a Business Certificate that it was doing business as Riverside Historical Realty Trust.

At approximately 11:00 a.m. on August 4, 1992, Bailey and the Debtor's attorney, Paul D. Nachtwey, Esq., informed BayBank's counsel, both in writing and verbally, that the Debtor had filed a bankruptcy petition and that it was their position that the filing automatically stayed BayBank's foreclosure sale scheduled for 2:00 p.m. that afternoon. At or about 2:00 p.m. on August 4, 1992, pursuant to the statutory power of sale granted BayBank by the

Trust, BayBank conducted a public, mortgage foreclosure auction sale of the Newburyport Property whose record title owner in fee simple absolute was the Trust. The Debtor's Chapter 11 filing occurred prior to BayBank's foreclosure sale.

Building 62 Corporation was the successful purchaser of the Newburyport Property at the foreclosure action. Building 62 Corporation, a Massachusetts corporation, is a wholly owned subsidiary of BayBank.

## III. DISCUSSION

### A. The Issues

The specific issue before the Court is whether the foreclosure sale of the Newburyport Property conducted by BayBank after the Debtor filed its Chapter 11 petition violated the automatic stay and should be set aside. Stated more generally, the question is whether the automatic stay applies to a foreclosure sale of real property owned by a nominee trust whose beneficiary is in bankruptcy. Resolution of the issue requires answers to the following separate questions: 1) what is the property of the estate? 2) what is the effect of foreclosure on the property of the estate? and 3) did BayBank take any action "to obtain possession of property of the estate or ... to exercise control over property of the estate"? *See* 11 U.S.C. § 362(a)(3).

The issues are important ones for two reasons: 1) BayBank is relying upon dicta in a previous decision of this Court (namely, that the beneficiary of a nominee trusts holds an intangible interest in the trust, not an interest in the real estate) to argue that the automatic stay does not apply to stay a foreclosure sale of real estate owned by a nominee trust whose beneficiary is in bankruptcy, *cf. In re Channel Realty Associates Limited Partnership*, 142 B.R. 597 (Bankr.D.Mass.1992) (case dismissed because the debtor, the beneficiary of a nominee trust, could not propose a confirmable plan);[2] and 2) recent Massachusetts deci-

---

**2.** In *In re L.G. Salem Limited Partnership*, 140 B.R. 932 (Bankr.D.Mass.1992), and *In re Cantonwood Associates Limited Partnership*, 138 B.R. 648 (Bankr.D.Mass.1992), the debtors were

beneficiaries of Massachusetts nominee trusts. In the former case, the court, in its findings of fact, found that the debtor's primary asset was a parcel of commercial real estate, title to which

sions teach that nominee trusts are ineligible debtors. *See In re Heritage North Dunlop Trust*, 120 B.R. 252 (Bankr. D.Mass.1990); *In re Village Green Realty Trust*, 113 B.R. 105 (Bankr.D.Mass.1990); *In re Medallion Realty Trust*, 103 B.R. 8 (Bankr.D.Mass.1989), *aff'd*, 120 B.R. 245 (D.Mass.1990) (the debtor, ostensibly a nominee trust, was eligible for bankruptcy relief since it was actually a partnership). *See also* 11 U.S.C. §§ 109(b), 101(41), 101(9).

Assuming both precepts are correct, a debtor that is the beneficiary of a Massachusetts nominee trust confronts a conundrum. If nominee trusts are ineligible to be debtors and the automatic stay does not protect the real property because legal title is held by the trust, absent a conveyance of the real estate by the trustee to the trust beneficiary, the bankruptcy filing by the beneficiary will not stay a foreclosure sale of the real estate. In short, the protections afforded to debtors under the Bankruptcy Code would be unavailable to either the trust or the beneficiary under these circumstances. The Debtor's motion tests the Bank's theory that the automatic stay does not prevent the foreclosure sale of real property standing in the name of a nominee trust whose beneficiary owns only an intangible or personal property interest in the trust, not the real estate that constitutes the trust *res*. The Court's decision has serious ramifications for troubled real estate still held by nominee trusts in Massachusetts.

B. Property of the Estate

■ Section 541 of the Bankruptcy Code defines property of the estate as "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The scope of section 541 is broad and is intended to include in the estate any property made available by other provisions of the Code. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

However, nonbankruptcy law defines the scope and existence of the property interest. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *In re Farmers Markets, Inc.*, 792 F.2d 1400 (9th Cir.1986).

The parties are in agreement that the Debtor did not hold record title to the Newburyport property. Accordingly, any interest the Debtor might have in the Newburyport property stems from its ownership of 100% of the beneficial interest in the Trust.

Few Massachusetts cases have characterized the interests of trust beneficiaries, particularly the beneficiaries of nominee trusts. In *Welch v. Davidson*, 102 F.2d 100 (1st Cir.1938), a case involving a dispute over gift taxes, the court stated that "in equity the beneficiary of a trust is the owner of the trust res; ... he has an equitable estate in the property constituting the trust and is considered the real owner." *Id.* at 102. In *In re Medallion Realty Trust*, 103 B.R. 8 (Bankr.D.Mass. 1989), *aff'd*, 120 B.R. 252 (D.Mass.1990), the court determined that at least in certain situations the beneficiaries' interest in a nominee trust may in fact be a partnership interest.

Several courts from other jurisdictions that have examined trusts similar to the nominee trusts used in Massachusetts have held that under state law that interest is a personal property interest, not a real property interest. *See In re Ameriswiss Associates*, 148 B.R. 349 (Bankr.S.D.Fla.1992), *In re Ainslie and Belle Plaine Limited Partnership*, 145 B.R. 950 (Bankr.N.D.Ill. 1992). Nevertheless, these courts have ruled that, under federal law, the beneficiaries are the equitable owners of the real property. *Id.*

Under Massachusetts law, nominee trusts are created "for the purpose of holding legal title to property with the trustees having only perfunctory duties; upon the termination of the trust, the beneficiaries

---

was held in the name of the trust. In the latter case, the court, as did the parties, treated the debtor as the owner of the real estate for purposes of its decision. Neither case directly addressed the issue that this Court now confronts. Both addressed issues relative to the confirmability of the debtors' proposed plans.

accede to title as 'tenants in common in proportion to their beneficial interest.'" *Johnson v. Holiday Inns, Inc.*, 595 F.2d 890 (1st Cir.1979), *quoting* R. Birnbaum and J. Monahan, "The Nominee Trust in Massachusetts Real Estate Practice," 60 Massachusetts L.Q. 364, 365 (Winter 1976). Moreover, the trustees of a nominee trust act as agents for the beneficiaries with respect to the management and control of the trust *res*. R. Birnbaum and J. Monahan, *supra*.

Pursuant to its terms, the Trust could be terminated "at any time by one or more of the beneficiaries by notice in writing to the Trustee and the other beneficiaries, if any...." The Declaration of Trust also gave the Debtor power to control Bailey's actions as Trustee. The Declaration of Trust provides that the Trustee, if and to the extent directed by the beneficiaries,

shall buy, sell, convey, assign, mortgage or otherwise dispose of all or any part of the Trust estate and as lessor or as lessee execute and deliver leases and subleases, and borrow money and execute and deliver notes or other evidence of such borrowing, and grant or acquire rights or easements and enter into agreements with respect to the Trust Estate, and direct any person or persons, acting singly or together with others and whether or not serving as a Trustee hereunder to sign checks, drafts, notes, bills of exchange, acceptances, undertakings and other instruments or orders for the payment transfer or withdrawal of money for whatever purpose and to whomsoever payable including those drawn to the individual order of a signer, and all waivers of demand, protest, notice of protest or dishonor of any check, note, bill, draft or other instrument made, drawn or endorsed in the name of the Trust. Any and all instruments executed pursuant to such directions may create obligations extending over any periods of time including periods extending beyond the date of any possible termination of the Trust. Notwithstanding any provisions contained herein, no Trustee shall be required to take any action which will, in the opinion of such

Trustee, involve him in any personal liability unless first indemnified to his satisfaction. Any person dealing with the Trustees shall be fully protected in accordance with the provisions of Paragraph 6 hereof.

The Declaration of Trust further provides that:

No purchaser, transferee, pledgee, mortgagee or other lender shall be under any liability to see to the application of the purchase money or of any money or property loaned or delivered to any Trustee or to see that the terms and conditions of this Trust have been complied with. Every agreement, lease, deed, mortgage, note or other instrument or document executed or action taken by any person appearing from the records of the Registry of Deeds to be a Trustee hereunder shall be conclusive evidence in favor of ever person relying thereon or claiming thereunder that at the time of the delivery thereof or of the taking of such action this Trust was in full force and effect, that the execution and delivery thereof or taking of such action was duly authorized, empowered and directed by the beneficiaries, and that such instrument or document or action taken is valid, binding, effective and legally enforceable. Any person dealing with the Trust Estate or the Trustees may always rely without further inquiry on a certificate signed by any person appearing from the records of the Registry of deeds to be a Trustee hereunder as to who are the Trustees or the beneficiaries hereunder or as to the authority of the Trustees to act or as to the existence or nonexistence of any fact or facts which constitute conditions precedent to acts by the Trustees or which are in any other manner germane to the affairs of the Trust.

The language used in the Declaration of Trust is consistent with the provisions the Massachusetts nominee trusts described by courts and commentators. It clearly demonstrates that the Trustee acted as an agent of its beneficiary—the Debtor—and, and that the Debtor had absolute control over the affairs of the Trust.

In *In re Medallion Realty Trust*, 120 B.R. 245 (D.Mass.1990), the United States District Court for the District of Massachusetts examined a series of Massachusetts Supreme Judicial Court decisions involving determinations of whether business associations were trusts or partnerships. *See, e.g., Williams v. Milton*, 215 Mass. 1, 102 N.E. 355 (1913); *Frost v. Thompson*, 219 Mass. 360, 106 N.E. 1009 (1914); *Neville v. Gifford*, 242 Mass. 124, 136 N.E. 160 (1922); *First National Bank of New Bedford v. Chartier*, 305 Mass. 316, 25 N.E.2d 733 (1940); *State Street Trust Co. v. Hall*, 311 Mass. 299, 41 N.E.2d 30 (1942). From its review, the district court concluded that, at least in situations involving proceedings brought by creditors or tax collectors,

> [t]he primary lesson that emerges from these cases is that the more power the beneficial interests have and exercise over the affairs of a business association, the more likely it is that association is a partnership....

120 B.R. at 248. The court noted examples of specific powers beneficiaries may hold, including "the ability to call meetings, appoint and remove trustees, amend or terminate the trust, and otherwise direct the operation of the business." *Id.* Accordingly, the court affirmed the bankruptcy court's determination that the debtor, Medallion Realty Trust, was not a business trust, but a partnership.

In *Medallion*, the district court relied primarily upon its review of Supreme Judicial Court opinions. Nevertheless, it noted the bankruptcy court's reliance on agency law, stating that:

> The court first decided that the structure of the Debtor was such that the trustees were, in fact, agents of the beneficiaries. A person may be both agent of and trustee for another. If he undertakes to act on behalf of the other and subject to his control he is an agent; but if he is vested with the title to property that he holds for his principal, he is also a trustee. In such a case, however, it is the agency relation that predominates and the princi-

pals of agency, rather than the principals of trust are applicable.

*Id.* at 246 (omissions omitted).

The hallmark of the court's analysis was the degree of control exercised by the beneficiaries. According to the court, if the trustee is subject to the control of the beneficiaries, the so-called trust is in fact a partnership. In this regard, *In re Dreske*, 25 B.R. 268 (Bankr.E.D.Wis.1982) held that a partner's bankruptcy estate is comprised of his personal legal or equitable interest in partnership property, not real estate owned by the partnership. The interest in the partnership is limited to "the right to demand and receive the individual partner's interest, if any, in partnership assets after an accounting and payment of partnership debts out of the property belonging to the partnership." *Id.* at 271.

An important lesson can be gleaned from the *Medallion* opinion that bears on the outcome of the instant case. As noted by the district court, Massachusetts cases permit creditors to pierce the "trust veil" to obtain recoveries against beneficiaries/partners in recognition of the fact that the beneficiaries maintain ultimate control over the affairs of the trust. In these situations, courts have not permitted the trust vehicle to shield the beneficiaries from liability. Similarly, in the bankruptcy context, there has been a reluctance to permit the beneficiaries of nominee trusts to shield their personal assets from the reach of creditors through the use of nominee trusts. In *In re Assembled Interests Corporation*, 117 B.R. 31 (Bankr.D.Mass. 1990), the court noted that Massachusetts bankruptcy courts reviewing the eligibility of nominee trusts for bankruptcy protection, though taking different tacks, "agreed that no filing should be accepted that does not encompass the personal liability of the real parties in interest." 117 B.R. at 32. *See In re Medallion Realty Trust*, 103 B.R. 8 (Bankr.D.Mass.1989), *aff'd* 120 B.R. 245 (D.Mass.1990), *In re Village Green Realty Trust*, 113 B.R. 105 (Bankr.D.Mass.1990), *In re Heritage North Dunlop Trust*, 120 B.R. 252 (Bankr. D.Mass.1990).

Clearly, the Debtor in the instant case is the real party in interest as it had control over the affairs of the Trust. Unlike the situations in the cases just cited, the trust beneficiary is before the Court. Indeed, under *Medallion*, if the beneficial interests in the Trust were held by several beneficiaries, the Debtor would be one partner in a partnership and *In re Dreske, supra*, would dictate the outcome. However, the facts in the instant case do not permit the inquiry to end here. The absence of other beneficiaries prevents the Court from analogizing the case to the partnership situation in *Medallion*. Likewise, the Court is constrained from ruling that this case is comparable to the filing a petition by a small stockholder in a large corporation—a scenario that would not require the filing of a motion for relief from stay in the stockholders' case by a secured creditor of the corporation, seeking to collect its debt.

The issues confronting the Court arise from the fact that the Debtor's assets technically do not include the Newburyport Property that is subject to BayBank's mortgage, although the Debtor listed an interest on Schedule A—Real Property. The Debtor also listed BayBank as a secured creditor on Schedule D with a $3.9 million claim.[3]

Illinois land trusts are similar to the nominee trusts prevalent in Massachusetts. A line of cases from the Seventh Circuit elevate substance over form and hold that trust beneficiaries are the actual equitable owners of the trust *res*. The cases so hold even though legal and equitable title to the *res* is held in the name of trustee, and the beneficiaries hold a personal property interest in the earnings, avails and proceeds from leases and other uses and from mortgages, sales and other dispositions of the property.

In *In re Ameriswiss Associates, supra*, on facts virtually identical to the facts in the instant case, the court considered a situation in which the debtor was the beneficiary of an Illinois-type land trust that was established pursuant to Florida law. Title to the real estate, a Class A office building, the revenues of which were at issue, was held by a Florida banking institution. The debtor/beneficiary, like the beneficiaries of nominee trusts in Massachusetts, had the "sole power (i) 'of direction to deal with the title to [the Property]' (ii) to 'manage and control [the Property]' and (iii) to 'receive the proceeds from rental sales, mortgages or other disposition of [the Property].' " 148 B.R. at 350. The court, in ruling on a mortgagee's objection to the debtor's proposed use of cash collateral, namely rents, determined that the rents were property of the debtor's bankruptcy estate. It stated:

> Illinois law's characterization of the beneficiary's interest as personal property without legal or equitable title to the realty is not controlling for purposes of federal law. Looking to the substance of the matter, we hold that the beneficiary of a land trust is the 'equitable owner of real property' within the meaning of the [Bankruptcy Code].

*Id.* at 351 *quoting Matter of Gladstone Glen*, 628 F.2d 1015, 1019 n. 1 (7th Cir. 1980). *See also Matter of Pentell*, 777 F.2d 1281, 1284 (7th Cir.1985), *Matter of Langley*, 30 B.R. 595, 598 (Bankr.N.D.Ind. 1983).

Likewise, in *In re Ainslie and Belle Plaine Limited Partnership*, 145 B.R. 950 (Bankr.N.D.Ill.1992), the bankruptcy court stated:

> The form of a land trust is such that the land trustee, not the beneficiary (whoever that may be), has legal and equitable title to the real estate. But in considering the issue here, the Court is to "look through the form [of an Illinois land trust] to the substance of a transaction." *In re Langley*, 30 B.R. 595, 599 (Bankr.N.D.Ind.1983). The Seventh Cir-

---

**3.** If the Debtor's interest is limited to a personal property interest in the trust only, the claim cannot possibly be secured because section 1111(b) only makes a nonrecourse claim recourse against the Debtor if the claim is secured by a lien on property of the estate. 11 U.S.C. § 1111(b). BayBank does not appear to have a lien on the Debtor's beneficial interest in the Trust. However, the Debtor has guaranteed the Trust's obligation to BayBank. The guaranty would give rise to a contingent, unsecured claim.

cuit reaffirmed this view that substance should prevail over form in Illinois-type land trusts in *In the Matter of Pentell*, 777 F.2d 1281, 1284 n. 2 (7th Cir.1985). Although contained in dicta, the Seventh Circuit's position is clear and consistent with an earlier case decided under the Bankruptcy Act, *In the Matter of Gladstone Glen*, 628 F.2d 1015 (7th Cir.1980).

Disregarding the form of an Illinois land trust has led those courts to conclude that for various purposes it is the beneficiary who is the owner of the real estate. That conclusion is derived from the fact that it is the beneficiary who has the right to control and manage the property and receive all the proceeds of the property. The land trustee acts only at the direction of the beneficiary. It is these attributes of control that determine who is the true owner of property and not legal fictions created to facilitate land transfers.

*Ainslie* at 955.

In *Ainslie*, a mortgagee bank moved for a declaration that certain beneficial interests in land trusts were not property of the estate or, in the alternative, modification or annulment of the automatic stay. Legal title to the mortgaged real estate was held by a trustee in three separate trusts. The bank had made loans to two individual beneficiaries, which were secured by a mortgage and a collateral assignment of the beneficial interest in the trusts. Separate trust agreements provided that no assignment of the beneficial interest in the land trust would be binding on the trustee or effective until lodged with and accepted by the Trustee. The two individual beneficiaries purported to assign their beneficial interests to the debtor partnerships. However, the assignments were never lodged with or accepted by the land trustee.

The court articulated the issue as "whether the debtors have an interest in the real estate that is the subject of the foreclosure proceedings so that these proceedings were stayed upon the commencement of the cases." *Id.* Since the court determined that the assignments by the individuals to the debtor partnerships was

ineffective, it ruled that the individuals, not the debtors, were the owners of the real estate, and the Bank's motion was granted.

The *Ainslie* case, like the *Ameriswiss Associates* case, is remarkably similar to the instant case and compels the conclusion that a beneficiary of a Massachusetts nominee trust is the beneficial owner of the real estate for purposes of the automatic stay because of the degree of control the beneficiary may exercise as the principal in the agency relationship described by the court in *Medallion*. *Welch v. Davidson, supra*, though dealing with a donative trust, leads to the same result. Clearly, were the Court to follow the Illinois cases, it would be compelled to allow the Debtor's motion and set aside BayBank's foreclosure sale.

The Illinois cases are persuasive because they elevate substance over form, something bankruptcy courts, as courts of equity, can appropriately do in the absence of *legal* impediments. However, the Court is struck by the incongruity of allowing the Debtor, in effect, to pierce the trust veil rather than BayBank.

The clear import of the words in the Declaration of Trust is that Eastmare fully intended that the mortgage the Trustee granted "was duly authorized, empowered and directed by the beneficiaries, and that such document or action taken is valid, binding, effective and legally enforceable." BayBank raises the concept of equitable estoppel, arguing that, by agreeing to the type of arrangement described in the Declaration of Trust, the Debtor recognized the right of a mortgagee bank to deal with the Trustee of the Trust, rather than itself with respect to the Newburyport Property. BayBank's equitable estoppel argument is not without appeal, as the Debtor utilized the trust vehicle when it was convenient to do so and, now that this is no longer the case, argues that the distinct legal entities that were created should be ignored.

In *In re Lawler*, 53 B.R. 166 (Bankr. N.D.Tex.1985), the court considered a debtor's argument that a mortgagee bank had violated the automatic stay. The Debtor and his brother owned property as co-tenants. The property was subject to a mort-

gage. Prior to his bankruptcy filing, the debtor transferred his one-half interest to a corporation, which in turn conveyed it to a trust. The mortgagee bank foreclosed on the property after the debtor' bankruptcy filing. The court stated the following:

> This Court has on several occasions encountered Debtor's attempt to pierce his own veil.... As far as this Court can determine, such an argument has never met with success....
>
>     *    *    *    *    *    *
>
> [t]his Court finds no justification under Texas law to permit Debtor to use the alter ego doctrine to achieve his own desires. The philosophy underlying *Balducci [In re Balducci Oil Company, Inc.*, 33 B.R. 847 (Bankr.D.Colo.1983) ], i.e., that the alter ego doctrine should be considered a sword for creditors rather than a shield for debtors, applies with equal force in the instant case.

53 B.R. at 168–69. Notably, the court found the bank had no notice of the Debtor's bankruptcy filing.

The Debtor in the instant case contends that its interest in the Trust is protected. In order to accept the Debtor's argument, the Court would have to follow the line of Illinois cases and reject BayBank's equitable estoppel argument. Though providing limited guidance, there are few Massachusetts cases clearly defining the nature and extent of the beneficiary's interest in a nominee trust except to highlight the importance of control in determining whether a trust is actually a partnership and to emphasize the beneficiaries' equitable interest in the trust principal. In short, the Court must decide whether to broadly define the term "owner" so as to permit the Debtor to include a beneficial interest in the Newburyport Property in its bankruptcy estate, as well as the beneficial interest in the Trust.

Certainly for tax purposes, "the refinements of title" are less important than "actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss v. Bowers*, 281 U.S. 376, 378, 50 S.Ct. 336, 336, 74 L.Ed. 916 (1930). *See also, People v. Chicago Title & Trust Co.*, 75 Ill.2d 479, 27 Ill.Dec. 476, 389 N.E.2d 540 (1979) and cases cited therein. In Illinois, land trusts are recognized as creating "a fiction which has become entrenched in the law of this State and accepted as a useful instrument in the handling of real estate transaction. Outside of relationships based on legal title, the trustees' title has little significance." *Id.*

The time is ripe to reach the same conclusion here in Massachusetts with respect to nominee trusts. This Court's review of the case law suggests that a Massachusetts court would so hold in view of the beneficiaries' pervasive powers to control nominee trusts, including the ability to revoke the trust at will. Accordingly, the Court rules that for purposes of section 541 of the Bankruptcy Code, the Debtor's estate includes equitable ownership of the nominee trust *res*. Although the Court is not unaffected by the result of this ruling, namely what amounts to a piercing of the trust veil to afford the Debtor the protections of the Bankruptcy Code, BayBank is not left without an arsenal of legal weapons to protect its rights.

## B. Violation of the Automatic Stay

The filing of a bankruptcy petition operates as a stay applicable to all entities of the following:

(1) The commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) The enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) Any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) Any act to create, perfect, or enforce any lien against property of the estate;

(5) Any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) Any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) The setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) The commencement or continuation or a proceeding before the United States Tax Court concerning the debtor.

11 U.S.C. § 362(a).

■ Under Massachusetts law, the mortgagor's equity of redemption is all that is sold at a mortgage foreclosure sale. *Dexter v. Aronson*, 282 Mass. 124, 184 N.E. 455 (1933). The purchase of real property through the statutory power of sale ends the mortgagor's equity of redemption. The mortgagee, if it bids in at the sale, becomes responsible for application of the purchase price as though it received the price upon a foreclosure sale to a stranger and is bound to apply the price to the payment of the mortgage debt. *Charlestown Five Cents Savings Bank v. White*, 30 F.Supp. 416 (D.Mass.1939). Any surplus proceeds after payment of the mortgage debt stand in place of the equity of redemption and belong to the mortgagor. *Spaulding v. Quincy Trust Co.*, 313 Mass. 752, 49 N.E.2d 251 (1943).

■ Since the Trust, not the Debtor, theoretically owned the equity of redemption, the foreclosure sale, again theoretically, would not directly affect a personal property interest in the Trust and violate the automatic stay. However, this Court has ruled that the Debtor, as the beneficiary of a nominee trust, is the actual equitable owner of the Newburyport Property. Consequently, the foreclosure sale conducted by BayBank was an action to obtain or to exercise control over property of the estate.

Assuming that the property of the Debtor's estate is only a beneficial interest in the Trust—a personal property interest—only section 362(a)(3) would seem to apply. Thus, the question would be whether Bay-Bank's foreclosure was an act "to exercise control over property of the estate." Again, if the Debtor's interest is merely a personal property interest in the Trust, both before and after the foreclosure sale, the Debtor's retention of that beneficial interest would be unaffected. Prior to the foreclosure sale, that interest would be tied to the value and existence of the Newburyport Property as the Trust *res*. After the foreclosure sale, the beneficial interest in the Trust would be tied to the existence and value of surplus proceeds resulting from the foreclosure sale, if any, that stand in the place of the mortgagor's equity of redemption. The foreclosure sale itself would not wrest control of the beneficial interest in the Trust from the Debtor. Rather, it would determine the nature and value of that interest in the same way as if the Trustee sold one piece of property and replaced it with another. However, even under this scenario, a broad reading of section 362(a) could lead to the conclusion that the stay had been violated.

More importantly in view of this Court's holding that the Debtor's estate includes a beneficial interest in the Trust *res* as property of the Debtor's estate, the foreclosure sale eliminated the Debtor's equitable interest in the Trust *res*. Accordingly, the Court rules that the automatic stay was violated and allows the Debtor's motion to set aside the foreclosure sale.

The foregoing shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. An appropriate order shall issue.